Tina L. WAYMAN b/n/f Wanda
R. MATTHEWS, Plaintiff,

v.

COLONIAL PENN LIFE INSURANCE
CO., Instaserv Systems, Inc., All American Life Insurance Company, and Consultants and Administrators, Inc., Defendants;

COLONIAL PENN LIFE INSURANCE
CO., Cross–Claim Plaintiff,

v.

ALL AMERICAN LIFE INSURANCE
COMPANY, Cross–Claim
Defendant.

No. CIV 3–89–0484.

United States District Court,
E.D. Tennessee, N.D.

April 28, 1992.

William N. Groover, Taylor & Groover, and Robert J. English, Knoxville, Tenn., for plaintiff.

Dan D. Rhea, Arnett, Draper & Hagood, Knoxville, Tenn., for Colonial Penn Life Ins. Co.

Charles M. Finn, Frantz, McConnell & Seymour, Knoxville, Tenn., for All American Life Ins.

Alan Parker, Morton, Lewis, King & Krieg, Knoxville, Tenn., for Instaserv Systems, Inc.

## MEMORANDUM OPINION

JORDAN, District Judge.

This is a civil action governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, et seq. ("ERISA"). The plaintiff says that on July 4, 1988, she was the spouse of Coy Wayman, who had group health insurance coverage through his employment. The underwriter of this policy was the defendant Colonial Penn Life Insurance Co. ("Colonial Penn"). It is unclear from the complaint what role the defendant InstaServ System, Inc. ("InstaServ") played, but the plaintiff alleges that InstaServ was Colonial Penn's "agent, servant and employee," suggesting that InstaServ was an administrator with respect to this employee welfare benefit plan.

The plaintiff says that on July 4, 1988, she suffered permanent and disabling injury in an accident. She says that Colonial Penn, through InstaServ, paid some medical bills incurred as a result of this injury, but then terminated coverage of her.

It is stated in the plaintiff's complaint that Colonial Penn increased the premium for the coverage provided by this policy after July 4, 1988, and that the plaintiff paid this increased premium when it became known to her. While it is not clear in the complaint, this suggests that some conversion feature of the policy had an impact upon this case. The plaintiff says in her complaint that she complied with all policy conditions regarding proofs of loss and submission of medical expenses.

In her amended complaint, the plaintiff added the defendants All American Life Insurance Company ("All American") and Consultants and Administrators, Inc. ("C & A").[1] It appears that All American became the underwriter of Coy Wayman's employee welfare benefit plan after the termination of the group insurance coverage underwritten by Colonial Penn, and that C & A was the administrator of this second plan. The plaintiff says that All American agreed to continue the coverage provided by the plan formerly underwritten by Colonial Penn, and agreed also to waive any limitation or exclusion of coverage by reason of her pre-existing condition, the condition caused by her accidental injury. The plaintiff says that All American's "agent," C & A, knew of her condition at the time All American became the group health insurance policy underwriter, and that C & A assured the plaintiff that she would continue to have coverage under the All American policy, but that All American then denied coverage.

Colonial Penn says in its answer that it terminated the group health insurance policy effective September 30, 1988 for reasons which had nothing to do with the plaintiff, and that it continued to provide individual coverage for the plaintiff for 90 days after September 30, 1988. It denies that it charged any premium for this 90–day continuation coverage.

The copy of its policy which is attached to Colonial Penn's answer shows that this policy was issued to a trustee of a trust for the benefit of multiple employers. See the definition of "multiple employer welfare

---

1. Before the plaintiff sued All American, Colonial Penn brought a third-party action against All American. The plaintiff now having sued both underwriters, the court will treat Colonial Penn's third-party action as a cross-claim. See Fed.R.Civ.P. 14(a) and 13(g).

arrangement" in 29 U.S.C. § 1002(40)(A), part of ERISA as codified.

InstaServ says in its answer that it is a subsidiary of C & A. It denies that it was Colonial Penn's agent, and says instead that it was "a servicing representative performing specified functions and duties for ... Colonial Penn" under an administrative agreement between Colonial Penn and InstaServ's parent, C & A.

All American says in its answer that the plaintiff was excluded specifically from coverage under its policy, because she was totally disabled as a result of the injury which she received on July 4, 1988, which rendered her an ineligible dependent under the All American Policy. All American denies that it waived any pre-existing condition limitation or exclusion in its policy.

In its answer, C & A denies that it was All American's agent, and denies that it had full knowledge of all of the plaintiff's conditions, as alleged by her.

Colonial Penn takes the position in its cross-claim that All–American waived any pre-existing condition limitation or exclusion in the latter's policy, and that All American therefore provided coverage for the plaintiff effective October 1, 1988. Colonial Penn says that it paid benefits for medical and hospitalization expenses incurred during the coverage period of All American's policy, and that it is entitled to reimbursement by All American for these benefits paid. Colonial Penn says that All American should also be primarily liable for expenses incurred by or on behalf of the plaintiff on and after March 31, 1989, because InstaServ, as All American's agent, offered the plaintiff's husband a conversion policy of insurance, but All American then denied Mr. Wayman's application for this conversion policy. On this basis, Colonial Penn seeks, in addition to reimbursement, indemnity against any liability which it might have to the plaintiff as a result of her loss of insurance coverage in 1989 and afterwards.

In response to Colonial Penn's cross-claim, All American insists that it excluded the plaintiff from coverage specifically, that it did not waive any pre-existing condi-

tion limitation or exclusion in her case, and that InstaServ was not its agent. All American states also that Colonial Penn had a contractual duty to provide coverage for the plaintiff during the first 90 days after the termination of the Colonial Penn policy, which, All American says, defeats Colonial Penn's claim for reimbursement.

Colonial Penn moved first for summary judgment [doc. 19, supplemented by doc. 22]. In support of its motion, Colonial Penn has submitted evidence to show that it decided before the plaintiff suffered injury to terminate all group health insurance policies underwritten by it for multiple employer trusts and administered by third-party administrators, which included the policy under which the plaintiff had coverage, and that it terminated this particular policy in accordance with all applicable policy provisions. The policy reserved to the underwriter the right of termination.

In a form letter dated August 23, 1988 and sent to the plaintiff's husband's employer, among others, Colonial Penn advised that employee group coverage under its policy would terminate effective October 1, 1988, and stated in part,

> Your administrator, [C & A], has made arrangements to offer you coverage through another company.... They will provide information to you concerning their coverage.
>
> Colonial Penn, of course, will honor all contractual obligations, and you and your insured employees may have the right to convert your insurance to a Colonial Penn conversion policy. For details see the section entitled "Conversion Privilege" in your Certificate of Insurance. Additionally, any insured totally disabled on October 1, 1988 may be eligible for extended benefits. Please see the section of your Certificate entitled "Extended Benefits in Event of Total Disability."

As for the roles of C & A and InstaServ in this series of events, it is undisputed that the latter was a subsidiary of the former. C & A formed InstaServ as a servicing organization, solely for the purpose of processing and paying insurance claims. InstaServ acted as the administra-

tor with respect to the Colonial Penn group health insurance for the multiple employer trust in which Coy Wayman's employer, Smokey Mountain Smelters, participated, but only to the extent and within the guidelines permitted by a written administrator agreement between Colonial Penn as the underwriter and C & A and InstaServ, collectively, as the administrator.

Colonial Penn granted only very limited claims authority to its administrator. In the plaintiff's case, Colonial Penn reviewed the claims file, and C & A paid benefits only upon Colonial Penn's approval.

The administrator played no role in the termination of the Colonial Penn group health insurance policies. Colonial Penn terminated this administrator agreement, as it had a right to do, at the same time that it terminated the policy under which Smokey Mountain Smelters' employees had coverage. When this occurred, C & A entered into a similar administrator agreement with All American.

On the basis of this evidence of their limited roles, C & A and InstaServ also moved for summary judgment [docs. 52 and 26, respectively].

When C & A offered coverage under the All American policy to the employers in the multiple employer trust, including Smokey Mountain Smelters, it stated in part, in its August 25, 1988 "Dear Employer" form letter, "Coverage will be provided by All American to all employees ... and to all their dependents who are currently insured *and not disabled* on October 1, 1988." (Emphasis added.) This was consistent with language in the All American policy and in the All American booklets for distribution to insured employees. For example, in the former, it is stated,

> If a dependent is confined in a hospital, or is unable to carry on all of the normal activities of a person of like age and sex in good health, on the date insurance for that dependent would otherwise become effective, the insurance will become effective on the date the dependent is no longer hospital confined or is able to resume such normal activities.

The vice-president of Coy Wayman's employer, Smokey Mountain Smelters, acknowledged her receipt of correspondence from C & A which advised that the Colonial Penn coverage would end on September 30, 1988. C & A recommended that Smokey Mountain Smelters obtain "continued coverage" under the All American policy, and stated, among other things, that there was no new underwriting involved in obtaining the All American coverage, that "[e]mployee applications are not required for current insureds," and that All American would give full credit for deductible, co-insurance, and waiting period requirements already met while the Colonial Penn policy was in force. C & A stated in its September 19, 1988 "Dear Employer" form letter, "Your company and all currently insured employees who are actively at work on October 19, 1988 are guaranteed acceptance...."

Smokey Mountain Smelters cancelled its coverage under the All American policy effective March 31, 1989. All American, which has moved for summary judgment with respect to both the plaintiff's claim [docs. 31 and 50] and Colonial Penn's cross-claim [doc. 32], takes the position that the plaintiff never became eligible before this date for coverage under its policy, because she remained throughout the policy period a totally disabled dependent of an employee.

Colonial Penn, however, points to a certificate rider to the All American group policy. The All American policy provision quoted above, which delays coverage for totally disabled dependents until they are no longer totally disabled, appears under the heading "EFFECTIVE DATE OF INSURANCE." The certificate rider states in part,

> THIS RIDER is issued as part of the Group Policy and to any individual certificates of insurance to which it is attached.
>
> The following provisions are amended: EFFECTIVE DATE: The Effective Date of coverage for any insured who was previously insured under the Employers Flex Health Trust Policy issued by Colonial Penn Life Insurance Company will

be the effective date of coverage established under that policy provided the insured was continuously insured from that date to the effective date of this Policy.

This Rider takes effect and expires with the Policy to which it is attached. Nothing contained in this Rider will be held to change, waive or extend any provisions of the Policy except as stated in this Rider.

Colonial Penn says that this amendment to the All American policy had the effect of picking up as insureds all those persons insured under the Colonial Penn policy at the moment of termination of the Colonial Penn coverage, including the plaintiff. Therefore, Colonial Penn argues, All American was the plaintiff's health insurer throughout the All American policy period. Colonial Penn therefore demands reimbursement from All American, as stated above, for the benefits paid by Colonial Penn during the All American policy period pursuant to the extension-of-benefits provision in Colonial Penn's policy, pointing to an exclusion in the Colonial Penn policy for "services covered by an extension of benefits provision if such expenses are incurred by a terminated Insured Person on or after the date he becomes eligible under another plan for similar benefits for the accidental bodily injury or sickness on which the extension of benefits is based," and relying also upon traditional principles of subrogation.

All American opposes this position taken by Colonial Penn in part by arguing that it is inconsistent with the position taken by the first underwriter after it terminated its group health policy. Upon the termination of the Colonial Penn policy, Colonial Penn's Henry J. Gorczycki corresponded with C & A in November and December, 1988 concerning Colonial Penn's understanding of its and All American's respective responsi-

bilities for employees of employers in the multiple employer trusts who had had Colonial Penn coverage, and who then had All American coverage. With respect to any employee "terminated and totally disabled, before 10/1/88 and has not selected state continuation or COBRA[2]," Mr. Gorczycki stated his understanding that responsibility for such an employee was "Colonial Penn's (for disabling condition only under extension of benefits from individual's term date)."

Mr. Gorczycki wrote also,

For any insured whose benefits are to be Colonial Penn's liability under an extension of benefits provision, there must be in the claim file a statement of total disability completed by the claimant's attending physician.... Any request for an extension of benefits will need home office approval *prior* to the committment (sic) of extended coverage. If this claimant was provided coverage by All–American Life, a formal determination by All–American is also required for our consideration.

(Emphasis in original.) Elsewhere in his correspondence, Mr. Gorczycki indicated Colonial Penn's understanding that All American had not assumed coverage of Colonial Penn's former insureds, but had instead rewritten coverage for some of the multiple employer trusts which had been Colonial Penn's clients.

C & A appears to agree with All American that this distinction between assumption and rewriting excuses All American from any liability on the plaintiff's claim for benefits. All American and C & A also take the position that the All American certificate rider referred to above did nothing but treat the All American policy period as a continuation of the Colonial Penn policy period for those otherwise eligible for coverage under the All American group policy, so that, for example, they would not

---

**2.** "COBRA" refers to the amendments to ERISA made by the Comprehensive Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99–272, 100 Stat. 82 (1986), specifically Title X of the Act, in the area of continuation coverage under group health plans. *See* 29 U.S.C. §§ 1161–1168, 29 U.S.C.A. §§ 1161–1168 (West 1991 supp.). No party to this civil action has made an argument for coverage on the basis of COBRA, in light of the fact that there was no "qualifying event," *see* 29 U.S.C. § 1163, in this case which might have entitled the plaintiff or her husband to invoke the provisions of COBRA.

have to begin again to meet deductible requirements. The rider did not, both All American and C & A say, remove the plaintiff's ineligibility for coverage under the All American policy as a totally disabled dependent of an employee.

This argument focuses on the word "insured" in the phrase "Effective Date of coverage for any insured" in the All American certificate rider. The plaintiff never became, because of other applicable policy provisions, an insured of All American due to her disability, the argument goes, so this amendment to the policy effective date provision remained irrelevant in her case.

The plaintiff's response to these arguments [doc. 55] asserts that "All American's position is correct, and Colonial Penn's position is totally erroneous," and that "it will be very obvious" to the court upon a review of the various motions and the material submitted in support of and in opposition to them "that Colonial Penn deliberately attempted to escape its obligation of paying lifetime health benefits up to its stated maximum of five million dollars, resulting from Plaintiff, Tina Wayman's, tragic July 4, 1988 accident." The plaintiff says also that "[i]t will ... be very obvious to the Court that the method by which Colonial Penn attempted to avoid such obligation was by falsely asserting that All American agreed to assume Colonial Penn's obligation for paying Plaintiff's health benefits resulting from said July 4, 1988 accident."

Apparently relying upon the asserted "obviousness" of this alleged malfeasance on the part of Colonial Penn, the plaintiff has submitted very scant evidentiary material to show the existence of any genuine issue of material fact in this case. There is some material consisting of internal memoranda and correspondence with C & A which shows that when it decided to terminate its underwriting of group health insurance policies for multiple employer trusts, Colonial Penn considered the risk that it might obtain some unprofitable business through insureds' exercises of conversion privileges, and the risks of litigation and "bad will." This proves nothing; if under-

writers did not take such matters into account in making decisions, they would not remain in the insurance business long. Furthermore, some of this material shows clearly that Colonial Penn began at least to consider the termination of its underwriting of these kinds of policies before the plaintiff ever suffered injury.

The plaintiff also points to two "Dear Employer" form letters discovered in the records maintained by Colonial Penn. One is the form letter which Colonial Penn sent to Smokey Mountain Smelters on August 23, 1988, quoted in part above in this opinion. The other form does not mention that C & A "has made arrangements to offer you coverage through another company," which Colonial Penn has explained adequately by the fact that C & A did not find an underwriter to rewrite coverage for all of the employers which had had Colonial Penn coverage. This second form letter, in language which differs only slightly from the one received by the plaintiff's husband's employer, states, "We are, of course, honoring all contractual obligations and offering several ways you may be able to obtain continuous coverage," and goes on to direct the reader to provisions in the certificate of insurance concerning conversion and extension of benefits in cases of disability.

The court fails to see anything underhanded in either of these form letters. The one sent to Smokey Mountain Smelters does not promise that the succeeding underwriter will assume coverage; it says only, "They will provide information to you concerning their coverage." Even if this is ambiguous, it is so only in that it might refer the employer for coverage information to C & A, to the succeeding underwriter, or to both C & A and the succeeding underwriter.

There is no promise in either form letter of the existence of a conversion feature. The employer is advised that one might exist, and pointed to the pertinent provision of the certificate of insurance. As for the existence of an extension-of-benefits feature, the plaintiff can hardly say that she was misled concerning this, because it is

undisputed that Colonial Penn paid benefits to or on her behalf under the group policy in issue for 90 days after the termination of the policy.

The plaintiff points finally to communications between C & A and Colonial Penn concerning her case in 1989. Yet, reading this evidence in the light most favorable to the plaintiff, all that it shows is that the insured, the plaintiff's husband, was probably not notified by his employer of the procedure to elect for continuation of coverage when Colonial Penn terminated the policy by which his employer provided coverage, that the plaintiff's husband continued to pay premiums for group health insurance through March, 1989, when All American terminated its policy, that Colonial Penn provided extended benefits to the plaintiff or on her behalf for 90 days after the termination of the Colonial Penn policy, and that C & A sought an "Administration exception" to treat the plaintiff as if she were eligible for coverage under COBRA[3].

An employee of C & A inquired whether Coy Wayman were not entitled to a refund of premiums paid after September 30, 1988, because "[t]his should have been changed to a policy for insured and children type coverage." This does not indicate a belief on the part of C & A that Colonial Penn had acted in any manner to deprive the plaintiff or her spouse of any conversion privilege. It indicates, instead, C & A's understanding that All American did not provide any coverage to or for the benefit of the plaintiff, because of her condition of total disability at the beginning of the All American policy period. Furthermore, when C & A inquired of Colonial Penn about treating the plaintiff's case as if it were one under COBRA, C & A stated that All American, not Colonial Penn, would have liability for the plaintiff's claims up to the date of the termination of the All American policy, which would entitle Colonial Penn to reimbursement from All American for the extended benefits paid by the former during the first 90 days of the latter's policy period.

Having reviewed the evidence submitted by the parties, the court comes to the following conclusions. The law concerning trial courts' evaluations of motions for summary judgment is well established in this circuit. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989). The rule itself instructs the opponent of such a motion—here, the plaintiff—that she "may not rest upon the mere allegations or denials of [her] pleading," but must instead show, by affidavit or otherwise as the rule permits, the existence of "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

■ Turning first to the third-party administrators, C & A and InstaServ, the plaintiff argues on the basis of ERISA that these defendants had a fiduciary duty to advise her of any conversion feature of the Colonial Penn policy, but her argument that any administrator is a fiduciary for the purposes of ERISA depends upon a misreading of 29 U.S.C. § 1002(21)(A)(iii), which renders a person who "has any discretionary authority or discretionary responsibility in the administration of such plan" a fiduciary. "[A] plan administrator who merely performs claims processing, investigatory, and record keeping duties is not a fiduciary." *Baker v. Big Star Division of the Grand Union Company*, 893 F.2d 288, 290 (11th Cir.1990) (citation omitted) (footnote omitted), *cited with approval in Baxter v. C.A. Muer Corporation*, 941 F.2d 451 (6th Cir.1991). The plaintiff has cited no case law authority to the contrary.

It is true that the administrator in *Baker, supra*, dealt with an employer-funded plan, but there is no logical reason why that should make a difference in this case. While C & A and InstaServ might arguably have been fiduciaries with respect to insureds whose claims were so small that one or both administrators had discretion regarding the payment of them, it is undisputed that, given the amount of the plaintiff's medical expenses, these administrators had no claims authority at all; in the plaintiff's case, one or both of them merely

---

**3.** *See* footnote 2, *supra.*

wrote checks upon Colonial Penn's instruction. Mr. Gorczycki of Colonial Penn testified during examination under Fed.R.Civ.P. 30(b)(6), "Colonial Penn would have required [the plaintiff's claims] file to be reviewed before payment could be made, and the payment would be made by [C & A] upon Colonial Penn approval."

It is also undisputed that, upon the termination of the Colonial Penn policy, this underwriter informed C & A that it, Colonial Penn, would handle directly matters pertaining to conversion. C & A and Insta-Serv had no discretionary authority, and therefore no fiduciary duties, with respect to this aspect of the group health insurance, too. The court finds that the plaintiff has failed to show the existence of any genuine issue of material fact which would justify keeping C & A and InstaServ as defendants in this lawsuit.

■ A second issue, whether Colonial Penn breached any duty owed to the plaintiff by deciding to get out of the business of underwriting group health insurance for multiple employer trusts, can also be addressed quickly. Counsel for the plaintiff conceded during argument before this court that nothing in ERISA requires a group health insurer to stay on the group risk forever. In the case cited for the proposition that a disabled dependent insured has a vested right to coverage under a group health insurance policy which forms an employee welfare benefit plan, *Wayne Chemical, Inc. v. Columbus Agency Service Corp.*, 426 F.Supp. 316 (N.D.Ind.), *affirmed as modified*, 567 F.2d 692 (7th Cir.1977), the Court of Appeals for the Seventh Circuit held that ERISA did not apply to the policy in issue, and enforced Indiana statutory law mandating extended benefits for the disabled child of an insured.

■ The plaintiff would have this court fashion a similar remedy in the case at bar, but she has not shown the applicability in her case of any statutory authority similar to that in *Wayne Chemical, supra*. It is clear in this circuit, at least, that ERISA does not grant to employees vested or nonterminable rights in employee welfare benefit plans, as opposed to pension benefit plans. *Musto v. American General Corporation*, 861 F.2d 897, 901 and n. 2 (6th Cir.1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989) (citations omitted). *See also Adams v. Avondale Industries, Inc.*, 905 F.2d 943, 947–50 (6th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990) (citations omitted).

It can be conceded for the purposes of this opinion that Colonial Penn had a fiduciary duty not to mislead the plaintiff or her husband with respect to any matter concerning coverage, including the availability of conversion to individual coverage under its group policy. *See Berlin v. Michigan Bell Telephone Company*, 858 F.2d 1154 (6th Cir.1988) (employer had a fiduciary duty not to misrepresent the availability of benefits under an early-retirement-incentive program). *See also Edwards v. State Farm Mutual Automobile Insurance Company*, 851 F.2d 134 (6th Cir.1988) (employer could not rely upon pension benefit plan language at odds with summary plan description language and a representation by a personnel manager; a claimant misled by summary plan description language need not prove detrimental reliance). The plaintiff relies heavily upon *Eddy v. Colonial Life Insurance Company of North America*, 919 F.2d 747 (D.C.Cir.1990), in which the court cited *Berlin, supra*, with approval. An examination of *Eddy*, however, will show why this court must distinguish it from the case at bar.

Eddy worked for Unitag, a travel agency. Unitag's employees had group health insurance coverage underwritten by Colonial Life, also called Chubb. In May, 1986, while still employed by Unitag and covered by the Chubb policy, Eddy was diagnosed as suffering from acquired immune sufficiency syndrome, or AIDS. Eddy scheduled exploratory surgery on September 14, 1987, but on September 10, he received a memorandum which advised that in light of the pending sale of Unitag to another travel agency, the Chubb policy was going to terminate on September 14.

Eddy telephoned Chubb for information, and it was about this call that Eddy and Chubb presented conflicting evidence. Eddy testified that he talked to a male supervisor, that he asked this person "about conversion rights underneath my policy," and that the supervisor responded that Eddy had no right to convert to coverage under an individual policy. Chubb's witnesses testified that Chubb had no record of such a call, and that no Chubb employee in the department to which Eddy's call would have been directed in the usual course of business was male.

The Unitag employees' group policy did have a conversion feature, but the deadline for Eddy's exercise of it passed. The district court ruled that Eddy was not entitled to any relief against Chubb, because he had not proved that he had inquired specifically about conversion, as opposed to continuation of coverage under federal and/or state law.

The Court of Appeals for the District of Columbia Circuit disagreed, finding the district court's notion of the insurer's fiduciary duty in such a situation too narrow:

> The trial court found that Eddy called Chubb, identified his employer, and stated that his coverage was ending.... As soon as Eddy did this, Chubb bore a fiduciary duty to convey correct and complete information material to Eddy's circumstance. This information would include the inapplicability of "continuation" provisions, the availability of "conversion" options, and the procedures for converting Eddy's health and life insurance coverage.

*Eddy, supra,* 919 F.2d at 751 (footnote omitted).

Eddy, in short, made an inquiry, which imposed upon Chubb the fiduciary duty to respond accurately and fully to his inquiry. In the case at bar, there is nothing in all of the evidentiary material submitted to show that Coy Wayman, his employer, the plaintiff, or anyone else on behalf of the plaintiff inquired of Colonial Penn about converting the plaintiff's coverage to an individual policy upon the termination of the Colonial Penn group policy. There is no showing that the plaintiff or her husband received or read any of the correspondence from Colonial Penn and C & A to Coy Wayman's employer, Smokey Mountain Smelters, upon which the plaintiff now relies. Even assuming that the plaintiff somehow relied upon this unseen correspondence, however, there is nothing misleading in it from Colonial Penn.

This underwriter told Smokey Mountain Smelters in this correspondence that C & A or All American, or both, would provide information concerning coverage under the latter's group health insurance policy. There was therefore no representation from Colonial Penn concerning continued coverage by the underwriter which rewrote the group insurance coverage. Colonial Penn also directed the employer to provisions in its certificate of insurance concerning conversion and extension of benefits, so that no misrepresentation claim can be advanced on the basis of any alleged difference between the language in the certificate and what was stated in the form letter to the employer.

It is obvious from the undisputed course of events in this case, and counsel for Colonial Penn conceded as much at oral argument before this court, that Coy Wayman did not apply to convert the Colonial Penn group coverage to an individual policy for his family because he believed mistakenly that he and his family had the same coverage under the All American group insurance policy. The plaintiff's husband continued to pay premiums for coverage under this policy throughout the All American policy period. Whatever the reasonableness of this belief, and whatever the source of it, it is clear in the record before this court that Colonial Penn said nothing to induce this belief. Indeed, Colonial Penn could not reasonably have been expected to make any representation about the coverage provided by another insurer's policy.

Colonial Penn's assumptions about its and All American's respective responsibilities found in the post-October 1, 1988 correspondence between Mr. Gorczycki of Colonial Penn and one or more representatives of C & A are irrelevant to any assessment

of liability against Colonial Penn in this case, because this correspondence was written after Coy Wayman elected to pay a premium for coverage under the All American group policy, because there is nothing to show that Coy Wayman or the plaintiff relied upon or even had access to this correspondence, and because Colonial Penn's assumptions about the coverage provided by All American, whether or not correct, could not have misrepresented in any manner the provisions of the Colonial Penn policy.

 The court must therefore grant Colonial Penn's motion for summary judgment, and dismiss the plaintiff's claim against this underwriter. It follows that Colonial Penn's cross-claim for indemnity against All American must be dismissed. Whether Colonial Penn has a valid cross-claim for reimbursement of the total amount paid by it pursuant to the extension-of-benefits provision of its policy depends, however, upon whether All American incurred any coverage liability with respect to the plaintiff.

The answer to this question depends in turn upon the construction, in the context of the other relevant evidence, of the certificate rider issued by All American, quoted in part above in this opinion. While the plaintiff has all but conceded that she does not have a claim against All American, the court is not convinced of the wisdom of this concession in light of the language of the certificate rider. Furthermore, an agreement by opposing parties that an issue may be decided under Fed.R.Civ.P. 56 does not bind the court.

> The filing of cross-motions for summary judgment by the parties does not empower the Court to decide genuine issues of material fact. Nor is the Court required to grant summary judgment in favor of one party or the other simply because cross-motions have been filed; genuine issues of material fact may still exist.

*Anthes v. Transworld Systems, Inc.,* 765 F.Supp. 162, 165 (D.Del.1991) (citations omitted).

The court finds that decision on this issue in this case should await an evidentiary hearing. The court will therefore dismiss the plaintiff's claims against C & A, Insta-Serv, and Colonial Penn, but not against All American at this time. Colonial Penn's cross-claim against All American will remain pending, but only to the extent that it seeks reimbursement for the amount paid by Colonial Penn during the 90–day extension-of-benefits period.