**Andrew MOFFITT, Plaintiff,**

v.

**WHITTLE COMMUNICATIONS, L.P., et al., Defendants.**

No. 3:94–cv–0176.

Eastern District of Tennessee, Northern Division.

Jan. 12, 1995.

Robert H. Green, Kennerly, Montgomery & Finley, P.C., Knoxville, TN, for plaintiff.

W. Kyle Carpenter, Tony R. Dalton, Woolf, McClane, Bright, Allen & Carpenter, Knoxville, TN, for defendant UNUM Life Ins. Co.

Dan D. Rhea, Arnett, Draper & Hagood, Knoxville, TN, for defendants Whittle Communications, L.P., Whittle Communications, Inc., Associated Partnership I, Inc., and Whittle Communications, L.P., Long Term Disability Income Plan.

## MEMORANDUM OPINION

JORDAN, District Judge.

This is a civil action governed by the provisions of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.* (ERISA). The action is before the court for consideration of multiple motions.

The defendant UNUM Life Insurance Company of America (UNUM) moved first for summary judgment [doc. 21; supporting brief, doc. 22]. The other defendants, Whittle Communications, L.P. Long Term Disability Income Plan, Whittle Communications, L.P., Whittle Communications, Inc., and Associated Partnership I, Inc.[1] (collectively, the Whittle defendants), followed suit [doc. 23; supporting brief, doc. 24]. The plaintiff then filed briefs in response [docs. 28 and 29], and UNUM filed a reply brief [doc. 30].

Next, the Whittle defendants moved again for summary judgment [doc. 32; supporting brief, doc. 33], on a limitations ground not stated in their earlier motion. UNUM then filed a supplemental motion for summary judgment [doc. 34], also arguing that the plaintiff's claim against it is time-barred. The plaintiff responded to these motions for summary judgments with briefs [docs. 35 and 36]. The Whittle defendants then replied to the plaintiffs' response [doc. 41].

The various exhibits submitted by the parties in support of and in opposition to these motions show that there is little dispute concerning the pertinent facts, except with respect to alleged oral conversations or negotiations between the plaintiff and one or more officers or management personnel of Whittle Communications, L.P. The court finds that oral argument would not assist it in ruling on the issues presented.

The undisputed evidence shows that before October 31, 1988, the plaintiff Mr. Moffitt was a full-time employee of Whittle Communications, L.P., and was a participant in the defendant long term disability income plan. The plan was funded by a group disability insurance policy underwritten by the defendant UNUM.

The Long Term Disability Income Plan issued by UNUM to Whittle Communications provided disability insurance for eligible em-

---

1. As is obvious from its name, Whittle Communications, L.P. Long Term Disability Income Plan is alleged to be an employee welfare benefit plan administered for the purpose of providing disability insurance to employees of Whittle Communications, L.P. Whittle Communications, L.P., was the plaintiff Mr. Moffitt's employer. The other two Whittle defendants are or were general partners in the employer, a limited partnership, and are sued here merely as being liable for any obligations of the partnership.

ployees in active employment. In the booklet which describes the plan and which was distributed to Whittle Communications' employees, "active employment" is defined in a commonsensical manner to require, among other criteria, that the employee be working for the employer "on a permanent full-time basis and paid regular earnings." Another section of the plan provides that cessation of active employment is deemed to be termination of employment, which terminates coverage, unless the employee is disabled on the date of termination, or the employer provides continued coverage, pursuant to a nondiscriminatory policy, for employees who have been temporarily laid off or given leaves of absence.

The plan booklet states an elimination period of 90 days, measured from the first day of disability, during which no benefit is payable. Upon disability, benefits are payable monthly after the end of the elimination period. Written notice of a claim is required within 30 days after disability begins, or as soon as possible. Written proof of claim is required "no later than 90 days after the end of the elimination period," or "as soon as reasonably possible," but no later than "one year after the time it is otherwise required." An insured employee may not commence suit on the disability insurance policy until 60 days after proof of claim is given, and may not commence suit more than three years after the time proof of claim is required. This booklet also provides, in its summary plan description portion, that a claimant may appeal to the insurer from a denial of a claim, within 60 days after receipt of the insurer's notice of denial of the claim.

The plaintiff Mr. Moffitt suffers from ocular histoplasmosis. In November 1987, the plaintiff's problems with his eyes were causing him difficulties at work. Nicholas Glover, then the president and chief executive officer of Whittle Communications, offered on behalf of the plaintiff's employer to assist the plaintiff in choosing an alternative career and in obtaining retraining for a new career. In his November 16, 1987, letter to the plaintiff, Mr. Glover stated that "at any point now or during this process, if you choose to resign, the Company will continue to pay your base salary for a period of 12 months, or until you become employed elsewhere."

On October 17, 1988, the plaintiff Mr. Moffitt wrote to Mr. Glover, confirming his understanding of the outstanding offer of "12 months severance pay upon receipt of my resignation," and giving notice of his resignation, to become effective on October 31, 1988. Mr. Moffitt wrote in this letter, "Additionally the subject of continued insurance coverage was not explicitly covered in [Mr. Glover's November 16, 1987 letter]. May I assume the company will (traditionally) provide coverage or offer an alternative solution?"

Mr. Glover responded to the plaintiff's resignation and inquiry in a letter dated October 21, 1988. In this letter, Mr. Glover wrote, "As we discussed, we will continue your base salary *and benefits* until October 31, 1989, as referred to in my letter of November 16, 1987." (Emphasis added.)

On December 19, 1990, the defendant UNUM received the plaintiff's application for disability benefits, dated November 5, 1990, together with the employer's report of claim, dated December 17, 1990, and an attending physician's statement. This was the defendant insurer's first notice of the plaintiff's claim. There is no evidence that the plaintiff made any earlier claim against his former employer for disability benefits.

In his application for disability benefits, the plaintiff described his disability as "Loss/impairment of vision inLeft eye later additional loss in both eyes." Mr. Moffitt assigned December 6, 1986, as the date on which he first noticed the symptoms of his illness, this being the date on which he was first treated for the condition. According to the plaintiff's attending physician, John C. Hoskins, M.D., Mr. Moffitt became disabled on August 1, 1989. On the employer's report of claim, Whittle Communications assigned October 21, 1988, as the date on which the plaintiff last worked for the defendant employer.

On January 11, 1991, a representative of UNUM telephoned Mr. Moffitt and told him that his claim had been denied. According to notes in UNUM's claim file, the plaintiff protested that he had been kept on Whittle

Communications' payroll until 1989 and his benefits had been continued until that time, and that therefore his claim had been submitted in a timely manner. These notes include the statement, "Feels we should reconsider now & avoid him having to go thru appeal process." After consulting with a superior, UNUM's representative advised Mr. Moffitt that his claim was being denied as untimely, that if he wished to appeal, he should send any supporting material to the address which would be provided in UNUM's letter, and that "even though our letter states we are denying because claim not filed w/in time limit in policy that claim would probably be denied because he was not a covered [employee]," based on the fact that the physician assigned a date of onset of disability after the last date on which the plaintiff was employed on a permanent, full-time basis. According to the claim file notes, Mr. Moffitt stated that he felt that he had been disabled since 1986 or 1987.

Nancy Kelley, a disability benefit specialist employed by UNUM, wrote to the plaintiff on January 11, 1991, confirming the denial of his claim. Ms. Kelley wrote,

Information received shows you were initially out of work as of 10/22/88. Your elimination period would have been satisfied on 1/20/89. Your application for benefits was received on 12/19/90. As this is well beyond the timeframe (sic) indicated in the policy, we regret to advise that we will not be able to give consideration to your application for benefits.

Ms. Kelley advised Mr. Moffitt of his right to seek administrative review of this decision within 60 days, and stated that because UNUM was denying the claim as late-filed, the insurer reserved the right "to enforce any and all provisions of this policy should your claim be reopened for any reason."

On December 16, 1992, almost two years later, Mr. Moffitt wrote a letter to UNUM "as a formal notice of appeals (sic) following the denial of my Nov. 1990 LTD claim." Mr. Moffitt wrote in his letter that ocular histoplasmosis was often accompanied by deep depression, including "a loss of time awareness especially acute for home bound (sic) individuals." In addition to asserting that he had submitted this request for administrative review in as timely a manner as possible under the circumstances, Mr. Moffitt also argued that his employment by Whittle Communications had not been terminated until November 1989, and that his claim was filed in a timely manner, within 15 months after November 1989.

UNUM responded to this appeal, denying it, in a letter dated February 12, 1993. UNUM noted the plan provision requiring the submission of a proof of claim within 90 days after the elimination period, and noted that Whittle Communications had assigned October 21, 1988, as the plaintiff's last day of work, making October 22, 1988, at the latest, the plaintiff's first day of disability for the purpose of determining the deadline for filing a proof of claim. In this letter, UNUM also noted the deadline for filing a proof of claim of one year after the time proof was otherwise required.

In the February 12, 1993, letter, UNUM stated,

Mr. Moffitt, we also wish to make you aware of several other issues regarding your application for Long Term Disability benefits. On the section completed by your attending physician, Dr. John Hoskins, he indicated that your date of disability was 8/1/89. If this was your actual date of disability, you would not have had Long Term Disability with UNUM. Your employer was incorrect if they (sic) advised you that your coverage would continue until 11/89.

The author of the letter cited the plan provision which deemed cessation of active employment to be termination of employment. The author noted also that if the plaintiff had filed a timely claim on the basis of a disability asserted to have commenced on October 21, 1988, the insurer would have conducted an investigation to rule out the existence of a pre-existing (and therefore not covered) condition, and stated that the late submission of this claim had severely hindered UNUM's investigative abilities. Finally, the author of this letter noted that Mr. Moffitt had been advised in UNUM's January 11, 1991, letter that he had 60 days within which to submit a request for review, and that the plaintiff's

request had been "received well beyond that time frame."

The plaintiff commenced this civil action, in the Knox County, Tennessee Circuit Court, on February 18, 1994. The defendants then removed the action to this court.

The defendants correctly read the plaintiff's amended complaint [doc. 14] to state three theories of recovery: that UNUM and the defendant disability income plan are liable to the plaintiff for benefits due under the plan; that if the plaintiff is not entitled to benefits under the plan, then the Whittle defendants are liable for a breach of the alleged contract under which the plaintiff's employer agreed to provide benefits (including, the plaintiff says, disability insurance) for one year after his resignation from active employment; and that if the plaintiff is not entitled to benefits under the plan, then the Whittle defendants are liable under ERISA for misrepresentation. This last theory, which the plaintiff labels "ERISA fraud," is stated in the alternative; the plaintiff says that Whittle Communications either misrepresented to him that he would have continuing disability insurance coverage, or that by its representation, the defendant employer established a new plan for the purpose of providing the plaintiff with disability insurance.

■ The plaintiff does not dispute that the plan, as described in the Whittle Communications Long Term Disability Income Plan booklet, allows a maximum of one year plus 180 days from the date of onset of disability within which to submit a proof of claim to UNUM.[2] If UNUM's view, that Mr. Moffitt ceased to be a participant in the plan when his resignation became effective (October 31, 1988), is correct, then measuring one year plus 180 days from the date most generous to the plaintiff, October 31, 1988, leads to a deadline of April 29, 1990, almost eight months before the plaintiff submitted his claim to the defendant insurer.

■ Furthermore, Mr. Moffitt is bound by his attending physician's assignment of August 1, 1989, as the date of the onset of his disability, for the reason that this is the only evidence of the onset of disability presented to UNUM. *See Miller v. Metropolitan Life Insurance Company,* 925 F.2d 979, 986 (6th Cir.1991) ("when reviewing a denial of benefits under ERISA, a court may consider only the evidence available to the [plan] administrator at the time the final decision was made").[3] Therefore, he is entitled to benefits under the plan only if he is correct in his theory that his employment was not terminated, for the plan's purposes, until October 31, 1989, when the one-year period during which he was maintained on Whittle Communications' payroll expired.[4]

■ The plan provision in question is clear and unambiguous, and it requires too tortured a reading of it to classify the year during which Mr. Moffitt received what was

---

2. This is consistent with this court's reading of similar language in a UNUM disability insurance policy, in *John D. Moon v. Donald F. White, III, and UNUM Life Insurance Company of America,* No. CIV 1–92–0487, mem. op. filed Sept. 16, 1993.

3. While Mr. Moffitt stated during a telephone conversation with a UNUM representative that he believed that he had been disabled since 1986 or 1987, the plaintiff has not argued this in this civil action. There is no medical evidence to support a finding of an onset of disability earlier than August 1, 1989. The plan defines "disability" and "disabled" to mean "that because of injury or sickness [the covered employee] cannot perform each of the material duties of [his or her] regular occupation;" all of the evidence before the court suggests that the plaintiff was a full-time employee of Whittle Communications throughout 1986 and 1987. Furthermore, a finding that the plaintiff was disabled on or be-

fore December 31, 1987, would require dismissal of the plaintiff's claim for benefits under the plan provision which bars any legal proceedings commenced "more than 3 years after the time proof of claim is required."

4. Mr. Moffitt points to evidence in the record before the court that in an internal memorandum, Whittle Communications assigned October 31, 1989, as the date of the termination of the plaintiff's employment. The subject-matter of this memorandum, a 1988 claim under a dismemberment insurance policy, is totally unrelated to the subject-matter of this civil action. The fact that the employer might have used, for administrative purposes, the date for which he was last paid as the date of the termination of the plaintiff's employment has no effect on the language used in the plan, which is controlling. This evidence is irrelevant, and therefore insufficient to show the existence of a genuine issue of fact on this point.

in fact severance pay as a period of "active employment". There is no evidence in this record of any communication, written or oral, from UNUM on the basis of which it might be said that the insurer amended or waived this policy definition in Mr. Moffitt's case. Therefore, the issue is whether, assuming *arguendo* that Whittle Communications, acting through its chief executive officer and perhaps others, promised Mr. Moffitt disability insurance coverage during the year after the effective date of his resignation, UNUM is somehow bound by this promise.

The plaintiff argues that the following language in the summary plan description portion of the Whittle Communications Long Term Disability Income Plan booklet vested discretion in his employer to extend coverage, and so rendered UNUM bound to provide him with an additional year's disability insurance coverage as a principal bound by the promise or representation of its agent:

> NOTE: If you cease active employment, see your supervisor to determine what arrangements, if any, may be made to continue your coverage beyond the date you cease active employment.

The plaintiff's reading of this provision is more imaginative than it is faithful to the text.[5] The provision simply advises the employee contemplating or facing a termination of his or her employment to discuss continuation of coverage with his or her employer. The phrase "if any" makes it clear that this plan provision does not itself constitute a continuation-of-coverage provision or agreement, and that it is possible that no continuation of coverage is available to the inquiring employee under his or her specific plan. No reasonable reader of the provision could conclude that its language promises that whatever an employer tells its employee about continuation of coverage, whether or not supported by the plan, the insurer will provide what the employer promises.

Furthermore, this provision in the summary plan description of the booklet should be construed in light of the section elsewhere in the booklet concerning the privilege to convert from group to individual disability insurance coverage under certain circumstances. While the summary plan description provision alerts the employee to the issue of continuation of coverage after the termination of employment, the section of the booklet concerning the conversion privilege supplies the substance of what Mr. Moffitt's employer should have told him in this case.[6]

---

**5.** In its memorandum opinion filed in *John D. Moon, supra* n. 2, this court quoted with approval as follows from *Christie v. K–Mart Corporation Employees Retirement Pension Plan,* 784 F.Supp. 796, 802–803 (D.Kan.1992) (citations omitted):

Terms in plans are construed without deferring to either party's interpretation and in accordance with established canons of contract interpretation. With the goal of giving effect to the parties' true intent, a court gives the terms of the Plan the common and ordinary meaning that a reasonable person in the position of an employee would give them. Stated another away, plans are to be construed according to their plain and ordinary meaning in the absence of an ambiguity. The plain meaning of written terms is not to be supplanted with contrary interpretations of the parties. Another basic canon is that a term is interpreted in harmony with other terms in the instrument. The meaning of a contract should not be determined from looking only at a single or isolated provision. Courts are not to rewrite or insert terms that impart an intent for the agreement that was never expressed at the time of execution.

**6.** ERISA mandates that a summary plan description be distributed to each participant covered under an employee welfare benefit plan, 29 U.S.C. § 1021(a)(1), and dictates what must be included in such a summary plan description, 29 U.S.C. § 1022(b). The inclusion in the summary plan description in this case of a notice concerning continuation of coverage might have been motivated by a desire to comply with those provisions of the Consolidated Omnibus Budget Reconciliation Act of 1985, Pub.L. No. 99–272, 100 Stat. 82 (1986) (COBRA), as amended, which added a part 6 concerning group health plans to subchapter I of ERISA as codified, 29 U.S.C. §§ 1161–1169. However, it appears that these provisions of COBRA mandate continuation of coverage and conversion privileges with respect to employee welfare benefit plans which provide health insurance, as distinguished from disability insurance. *See* 29 U.S.C. § 1167(1) and the definition of "medical care" in § 213(d)(1)(A) of the Internal Revenue Code, 26 U.S.C. § 213(d)(1)(A).

Placing the summary plan description language on which Mr. Moffitt relies against this backdrop of the pertinent statutory law reinforces the court's conclusion that the language cannot reasonably be construed to bind UNUM to any continuation-of-coverage promise which Whittle Communications might have made in disregard of the provisions of this plan.

There is no ground in this case for holding UNUM liable on the basis of what might have been Whittle Communications' assumption concerning Mr. Moffitt's disability-insured status during the year after the effective date of his resignation, especially since any such assumption finds no support in the plain language of the plan booklet.

■ The court finds as a matter of law, on the basis of the undisputed evidence in this record, that Mr. Moffitt's employer, in communicating with him concerning the continuation of coverage under the Whittle Communications Long Term Disability Income Plan, was not acting as an ERISA fiduciary so as to bind UNUM by any promises or representations made by the employer. This court discussed ERISA's definition of a fiduciary, in 29 U.S.C. § 1002(21)(A), in *Wayman by Matthews v. Colonial Penn Life Insurance Co.*, 805 F.Supp. 525 (E.D.Tenn.1992). *See also Baxter v. C.A. Muer Corporation*, 941 F.2d 451 (6th Cir.1991). While the discussions in those cases dealt with professional plan administrators which were neither employers nor insurers, the law as stated in the published opinions applies equally to Whittle Communications in this case. As discussed above, the plan gave Whittle Communications no discretionary authority or responsibility with respect to the disability income plan, and there is no evidence in this record that UNUM delegated any such discretionary authority or responsibility to the plaintiff's employer. There is nothing to show that Whittle Communications had the power to make plan policies or interpretations. The plan booklet and the course of action followed by Mr. Moffitt in this case indicate that UNUM retained even the ministerial function of processing claims, requiring claims to be submitted to it on its forms.

■ For the reason that the plaintiff did not submit a proof of claim within the maximum time allowed after he ceased to be in active employment, and therefore ceased to be a participant in this disability income plan, UNUM is entitled to a summary judgment of dismissal in this case. In the alternative, this defendant is entitled to summary judgment in light of the plaintiff's failure to avail himself of the available administrative review

procedure until more than a year after the passage of the 60–day deadline. The evidence is clear and undisputed that in addition to the language in the plan booklet concerning the administrative review procedure, UNUM advised Mr. Moffitt orally and in writing of the availability of the procedure, and of the time allowed for submitting a claim for review. There is also evidence that when UNUM first advised him of the denial of his claim, Mr. Moffitt stated orally that the insurer should reconsider its decision immediately, and not require him to go through the appeal process.

■ Exhaustion of administrative remedies is a prerequisite to commencing suit under ERISA to recover benefits alleged to be due under an employee welfare benefit plan. *Baxter v. C.A. Muer Corporation, supra*, 941 F.2d at 453. "The fact that permissive language was used in framing the administrative review provision makes no difference." *Id.* at 454 (citation omitted). The court agrees with those courts which have held that a claimant's failure to comply with a reasonable time constraint imposed by a plan for administrative review of denial of a claim precludes judicial review of the claim. *See Graham v. Federal Express Corporation*, 725 F.Supp. 429, 437 (W.D.Ark.1989); *Tiger v. AT & T Technologies Plan for Employees' Pensions, Disability Benefits*, 633 F.Supp. 532, 534 (E.D.N.Y.1986). The policies promoted by internal dispute resolution procedures, such as minimizing the number of frivolous ERISA lawsuits, promoting the consistent treatment of benefits claims, and providing a nonadversarial, less costly alternative to litigation for the resolution of disputes, would be poorly served if benefits claimants were free to ignore the time limits for seeking administrative reviews of denials of benefits claims. The longer a claimant is allowed to wait before seeking such review of a denial of his or her claim, the more the decision-maker might be prejudiced by the staleness or even non-existence of relevant evidence, especially evidence of the claimant's physical condition at the time pertinent to his or her claim.

The court disagrees with the plaintiff's argument that by reviewing the plaintiff's

claim, UNUM waived the plan provision requiring a request for administrative review within 60 days, or is estopped to rely on the provision. UNUM's review of the claim after receiving Mr. Moffitt's long-past-due request for reconsideration of the denial of his claim could only have been for the plaintiff's benefit. Furthermore, in its February 12, 1993, letter upholding its earlier denial of the claim, UNUM stated as one reason for its decision:

> Finally, as you were advised in our letter of 1/11/91, if you disagreed with our determination on your claim, you were required to file your written request for review with (sic) 60 days of receipt of that letter. Your letter of appeal, dated 12/16/92, was received well beyond that time frame.

The court having decided that the plaintiff's claim for relief against UNUM is subject to dismissal for the two reasons stated, it is unnecessary to address this defendant's motion for summary judgment on the limitations ground. With respect to the Whittle defendants, however, a different case is presented. Whittle Communications is named as the plan administrator in the summary plan description portion of the Whittle Communications Long Term Disability Income Plan booklet. A plan administrator which makes misleading communications to plan participants concerning such matters as eligibility or the extent of benefits under a plan is subject to liability under ERISA for breach of a fiduciary duty. *Berlin v. Michigan Bell Telephone Company,* 858 F.2d 1154, 1163 (6th Cir.1988).[7]

Accepting the plaintiff's deposition testimony as true, as the court must at this stage of this litigation, there is in this case a genuine factual issue concerning whether Whittle Communications, through Mr. Glover and perhaps others, promised Mr. Moffitt or represented to him that he would have disability insurance coverage during the one-year period after his resignation. The plain-

tiff's view of the matter is supported by the phrase in Mr. Glover's October 21, 1988, letter, "[a]s we discussed," which implies a previous, oral promise or representation concerning continuing disability insurance coverage. Furthermore, Whittle Communications paid premiums to UNUM for coverage of Mr. Moffitt throughout the year after the effective date of his resignation, and there is some evidence of a company policy at the time to provide benefits to employees for some period or periods of time after the termination of their employment.

The court must therefore confront directly the limitations issue presented by the Whittle defendants' second motion for summary judgment. The limitations issue in turn requires the court to consider how best to categorize the plaintiff's claims against the Whittle defendants. The plaintiff says that his claims for relief against these defendants are in fact a 29 U.S.C. § 1132(a)(1)(B) claim for benefits due him under the plan and to enforce his rights under the plan. (The plaintiff argues also that if he is not entitled to any benefits under the Whittle Communications Long Term Disability Income Plan as described in the plan booklet, Whittle Communications nevertheless, by Mr. Glover's letters to Mr. Moffitt, established a separate employee welfare benefit plan for his sole benefit.) The Whittle defendants argue that the plaintiff's claims are in fact claims for damages arising out of alleged misrepresentation or a breach of a fiduciary duty.

While an employer's misrepresentation concerning the terms of an employee welfare benefit plan may breach the employer's general fiduciary duty to provide truthful and accurate information in response to an employee inquiry about benefits, it is not a breach of a fiduciary duty of a kind contemplated by 29 U.S.C. § 1109(a), unless the employer is found to be a fiduciary, as defined in 29 U.S.C. § 1002(21)(A), with respect to the function or conduct in issue. *Compare Tregoning v. American Communi-*

---

**7.** A finding that a plan administrator had a fiduciary duty to communicate accurate information concerning an employee welfare benefit plan does not necessarily require a finding that the administrator was a fiduciary for the purpose of holding the administrator to be the plan's under-

writer's agent. The former duty arises from the administrator's function as a source of information. The latter arises from the degree of substantive discretion granted by the plan to the administrator.

ty *Mutual Insurance Company*, 815 F.Supp. 1054, 1058–59 (W.D.Mich.1992), *affirmed*, 12 F.3d 79 (6th Cir.1993), *cert. denied*, —— U.S. —— [114 S.Ct. 1832] 128 L.Ed.2d 461 (1994). Because the Whittle defendants had no discretionary authority or responsibility under the plan in issue, and exercised none, and because they had no authority to grant or deny claims, they were not an ERISA fiduciary or fiduciaries for the purposes of this litigation. Therefore, 29 U.S.C. § 1113, which provides a statute of limitations "with respect to a fiduciary's breach of any responsibility, duty, or obligation *under this part*, or with respect to a violation *of this part*" [8] (emphasis added), has no application to this case.[9]

"ERISA provides no statute of limitations for section 1132(a)(1)(B) actions and ... in the absence of a federally mandated statute of limitations, the court should apply the most analogous state law statute of limitations. ... Other courts have uniformly characterized section 1132(a)(1)(B) claims as breach of contract claims for purposes of determining the most analogous statute of limitations under state law." *Meade v. Pension Appeals and Review Committee*, 966 F.2d 190, 194–95 (6th Cir.1992) (citations omitted).

■■■ The plaintiff argues that Tennessee's six-year statute of limitations applicable to actions for breach of contract, Tennessee Code Annotated § 28–3–109(a)(3), applies in this case, while the Whittle defendants argue for the three-year statute, T.C.A. § 28–3–105(1). The court finds as a matter of law that any claim made by the plaintiff which rests on a theory of misrepresentation or of a breach of a fiduciary duty or duties is time-barred. When UNUM denied Mr. Moffitt's claim in January 1991, the plaintiff knew or reasonably should have known of the existence in his case of all of the elements of claims against the Whittle defendants on

these theories. He allowed more than three years to pass before commencing his lawsuit. His late filing of a request for administrative review, almost two years after the denial of his claim, cannot serve to toll the running of the limitations period.

Mr. Moffitt's claims against the Whittle defendants for breach of contract, however, survive these defendants' motion for summary judgment. As the court has stated above, there are unresolved issues of fact concerning what Whittle Communications, L.P., acting through its chief executive officer and perhaps others, might have represented or promised to Mr. Moffitt. The reference in Mr. Glover's October 21, 1988, letter to a prior discussion on the subject suggests that Mr. Moffitt might be able to prove that Whittle Communications' promise to extend benefits (if any) was supported by consideration. The word "benefits" in Mr. Glover's letter creates an ambiguity which cannot be resolved by summary adjudication.

■■■ It should be understood that the court does not agree with the plaintiff's argument, based on *Williams v. Wright*, 927 F.2d 1540 (11th Cir.1991), *on remand*, 783 F.Supp. 1392 (S.D.Ga.1992), that the correspondence between him and Mr. Glover created a second employee welfare benefit plan for his sole benefit. The evidence in the record before the court shows nothing of the detail set out in the letter on the basis of which the *Williams v. Wright* court found an ERISA plan. *See id.* at 1542 n. 3. Because of the ambiguity inherent in Mr. Glover's use of the word "benefits" without any modification or explanation, no reasonable person reviewing this correspondence would be able to ascertain the intended benefits provided by the asserted plan. *See id.* at 1543.

■■■ This does not mean, however, that Mr. Moffitt's breach-of-contract claims are governed by Tennessee law. Because

---

8. The part referred to in the statutory language is part 4 of subtitle B of subchapter I of ERISA as codified, concerning fiduciary responsibility.

9. "[B]reach of [the fiduciary] duties [codified at 29 U.S.C. § 1104] constitutes a violation of 29 U.S.C. § 1109, which can support a claim under 29 U.S.C. § 1132(a)(3)(B)." *Flacche v. Sun Life*

*Assurance Company of Canada (U.S.)*, 958 F.2d 730, 733 (6th Cir.1992). Because there is no evidence in the case at bar of a violation of any fiduciary duty codified at 29 U.S.C. § 1104, it is unnecessary to decide here whether the statute of limitations contained in 29 U.S.C. § 1113 would apply to such a § 1132(a)(3)(B) claim.

the subject matter of the agreement, if any, which existed between Whittle Communications, L.P., and the plaintiff clearly had reference to a preexisting ERISA plan or plans (at least insofar as it concerned matters other than compensation), the remaining subject matter of this lawsuit cannot be controlled by state law. If a state-law claim *relates to* an employee benefit plan, it is preempted by ERISA. *Gordon v. Barnes Pumps, Inc.,* 999 F.2d 133, 137 (6th Cir.1993). What remains of the plaintiff's claims, therefore, is governed by federal common law under ERISA.

In summary, the court finds the defendant UNUM's first motion for summary judgment well taken, and will accordingly dismiss the plaintiff's claim against this defendant. With respect to the Whittle defendants' motions for summary judgment, the court will deny the first one, but will grant the second one in part, and will accordingly dismiss all of the plaintiff's claims against these defendants except his claims on a breach-of-contract theory, which are not time-barred under the applicable Tennessee statute of limitation borrowed by federal law. These remaining claims, the court holds, are governed by federal common law under ERISA.

The court will enter an order in accordance with this memorandum opinion.

### ORDER

For the reasons stated by the court in its memorandum opinion filed simultaneously with this order, the court finds the defendant UNUM Life Insurance Company of America's first motion for summary judgment [doc. 21] well taken, and it is GRANTED. It is ORDERED that the plaintiff's claim against this defendant in this civil action is DISMISSED.

The court finds the defendant UNUM Life Insurance Company of America's supplemental motion for summary judgment [doc. 34] not well taken, and it is DENIED as moot.

The court finds the first motion for summary judgment filed by the other defendants, Whittle Communications, L.P. Long Term Disability Income Plan, Whittle Communications, L.P., Whittle Communications, Inc., and Associated Partnership I, Inc. (collective-ly, the Whittle defendants) [doc. 23] not well taken, and it is DENIED.

The court finds the Whittle defendants' second motion for summary judgment [doc. 32] well taken in part, and it is GRANTED IN PART. It is ORDERED that the plaintiff's claims against the Whittle defendants on theories other than a theory of breach of contract are DISMISSED as time-barred. The court rules that the plaintiff's breach-of-contract claims against the Whittle defendants will be governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.* (ERISA).

The court finding that oral argument would not assist it in deciding the issues presented by the defendants' motions for summary judgment, the court finds the motion for a hearing or oral argument [doc. 42] not well taken, and it is DENIED.