Arthur FALLICK, Plaintiff,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY and Nationwide Life Insurance Company, Defendants.

No. C2–95–1273.

United States District Court,
S.D. Ohio,
Eastern Division.

March 12, 1997.

Chattman, Gaines & Stern, Roger W. Van Deusen, Cleveland, OH, Milberg Weiss Bershad Hynes & Lerach, L.L.P., Melyvn I. Weiss, Brad N. Friedman, Aaron W. Tandy, New York City, for Plaintiff Fallick.

Bricker & Eckler, Randolph C. Wiseman, Anne Marie Sferra, Columbus, OH, for Defendant Nationwide.

## MEMORANDUM OPINION AND ORDER

GRAHAM, District Judge.

Plaintiff Arthur Fallick is a former employee of defendant Nationwide Mutual Insurance Company, which is a subsidiary of defendant Nationwide Life Insurance Company (both hereinafter occasionally referred to as "Nationwide"). Fallick is a beneficiary of an employee medical benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended,

29 U.S.C. § 1001 *et seq.* Plaintiff alleges that defendants improperly reduce or deny claims for benefits on the grounds that such claims are in excess of what defendants determine to be "reasonable and customary," and that defendants ignore directions on their own preprinted claims forms and misdirect reimbursement claims to providers who have already been paid.

In its order dated September 27, 1996, this Court converted the motion to dismiss for failure to state a claim upon which relief can be granted to a motion for summary judgment on the issue of exhaustion of administrative remedies. The parties were then granted further time in which to submit evidence and briefs on this issue. The parties have done so and this matter is now before the Court on defendants' motion for summary judgment.

### I.

Plaintiff has currently pending before this Court a motion to certify this case as a class action. A motion for summary judgment may be decided before the district court determines whether the action is maintainable as a class action. *Thompson v. County of Medina, Oh.,* 29 F.3d 238 (6th Cir.1994); *Marx v. Centran Corp.,* 747 F.2d 1536, 1552 (6th Cir.1984), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985).

> Neither Fed.R.Civ.P. 23 nor due process necessarily requires that the district court rule on class certification before granting or denying a motion for summary judgment. Rule 23 clearly favors early determination of the class issue, but where considerations of fairness and economy dictate otherwise, and where the defendant consents to the procedure, it is within the discretion of the district court to decide the motion for summary judgment first.

*Wright v. Schock,* 742 F.2d 541, 545–546 (9th Cir.1984). In this case, defendants, who have moved for summary judgment, clearly consent to the immediate resolution of the issues raised therein. Furthermore, it is particularly appropriate to resolve the issue of exhaustion of administrative remedies be-

fore addressing the issue of class action certification. Therefore, this Court shall proceed to decide the motion for summary judgment.

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir.1993); *Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs.*, 979 F.2d 1131, 1133 (6th Cir.1992) (per curiam). The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case at issue, *LaPointe*, 8 F.3d at 378, which may be accomplished by pointing out to the court that the nonmoving party lacks evidence to support an essential element of its case. *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1389 (6th Cir.1993). In response, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir.1993). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). *See generally Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir.1989).

In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir.1993) (quoting *Anderson*, 477 U.S. at 251–53, 106 S.Ct. at 2511–13). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356,

89 L.Ed.2d 538 (1986); *see Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512; *see Gregory v. Hunt*, 24 F.3d 781, 784 (6th Cir.1994). Finally, a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Adams v. Metiva*, 31 F.3d 375, 378 (6th Cir.1994).

## II.

All ERISA plans are required to provide a claims appeal procedure. 29 U.S.C. § 1133, which governs the claims procedure under ERISA, provides that every employee benefit plan shall "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). While this section does not require the exhaustion of the administrative remedies it requires plans to provide, the Sixth Circuit Court of Appeals has held that "[t]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Costantino v. TRW, Inc.*, 13 F.3d 969, 974 (6th Cir.1994) (quoting *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir.1991)); *see also Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1226–27 (11th Cir.1985), *cert. denied*, 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986); *Amato v. Bernard*, 618 F.2d 559, 566–67 (9th Cir.1980). However, the exhaustion requirement may be excused if fulfilling that requirement would be futile or the remedy inadequate. *Costantino* at 974; *Amato*, 618 F.2d at 568.

As a general matter, the decision whether to apply the exhaustion requirement is a matter of the district court's sound discretion. *See Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 453–54 (6th Cir.1991).

### III.

In December 1992, plaintiff took a permanent disability leave from Nationwide Mutual after approximately twenty-three years employment. Plaintiff was and is entitled to health care and other benefits under Nationwide Group Insurance Policy Number 1202200, until January 1, 1994, and thereafter under the Nationwide Insurance Companies and Affiliates Employee Health Care Plan (hereinafter collectively referred to as the "Nationwide Plans"). Nationwide Life had insured the Nationwide Group Insurance Policy from on or before January 1, 1990 to December 31, 1993. Nationwide Life was therefore the fiduciary of that plan as that status is defined by 29 U.S.C. § i002(14)(A) According to the amended complaint, defendant Nationwide Mutual has continually been the "plan sponsor" for the Nationwide Plans as that term is defined under 29 U.S.C. § 1002(16)(B). Since January 1, 1994, Nationwide Mutual has been self-insured, thus qualifying as a fiduciary for the Nationwide Insurance Companies and Affiliates Employee Health Care Plan under 29 U.S.C. § 1002(14)(A).

Defendants have, since 1990, regularly included in their standard group policies a coverage exclusion limiting payment and/or reimbursement to charges which are "reasonable and customary." Any amount of a charge in excess thereof is not covered by the policy and is not applied to the individual's deductible. The "reasonable and customary" exclusion is defined by defendants in the insurance contracts and the employee handbooks as follows:

> It means reasonable in terms of service, care, or treatment provided, and customary in that it is equal to the charge usually made by that provider and does not exceed the usual charge made by those in the same geographical area with similar professional standing.

Nationwide Employee Handbook at 1195 (attached as Ex. 5 to Fallick Aff. of July 9, 1996). Plaintiff alleges that defendants refuse to disclose any further information or data relating to how they determine what charges are in excess of "reasonable and customary." Plaintiff claims that defendants'

calculations of reasonable and customary charges deviate from their written description of those calculations in three ways.

First, plaintiff asserts that defendants calculate their payments for their group insurance plans based upon a set percentile (e.g. the 85th or 90th percentile) of the entire range of charges for a given procedure in a geographic region. Plaintiff claims that this practice is inconsistent with the "equal to the charge" and "does not exceed the usual charge" language that defendants use in their definition of "reasonable and customary."

Second, plaintiff asserts that defendants routinely fail to calculate the "usual charge" for a given medical procedure by the "reasonable and customary" amount in a geographic area. According to the amended complaint, defendants instead rely upon an organization known as the Health Insurance Association of America ("HIAA"), an association of commercial insurers that is purportedly supported by defendants, for such figures. Plaintiff also alleges that HIAA's data is sometimes inadequate, and that when that is the case, multiple disparate geographic areas are grouped together in the process of calculating the "usual charge."

Third, plaintiff contends that, based upon defendants' payment patterns, defendants make no effort to differentiate the professional standing of various health care providers. According to the amended complaint, for instance, defendants treat as identical all surgeons in a particular field for purposes of determining a "reasonable and customary charge," regardless of a surgeon's standing in the profession or reputation in the community.

Plaintiff also alleges that defendants' claim form allows the participant to indicate whether the participant has paid the provider. According to the amended complaint, even in those instances when the participant indicates on the claim form that he or she has paid the provider, defendants nevertheless routinely forward payment to the provider. Plaintiff believes that defendants do so in order to take advantage of the time value of money while the error is being corrected.

Plaintiff contends that defendants' wrongful conduct has damaged him and other members of the proposed class. Plaintiff, as an individual and as the sole representative for the proposed class, brings claims for recovery of benefits and enforcement of rights under ERISA, for breach of fiduciary duty under ERISA and for estoppel under ERISA and federal common law. The amended complaint also seeks an accounting in addition to the declaratory and injunctive relief. Defendants assert that plaintiff has failed to utilize the administrative review procedures established in the Nationwide Plans to raise his concerns about the specific aspects of defendants' method of determining reasonable and customary charges that are the subject of this action or to complain about the misdirection of payments to service providers when the claim form indicates that the provider has been paid.

Defendants reference § 13.1.13 of the plan which is currently in force, which provides:

> No action shall be brought against the Claims Administrator, the Plan Sponsor, or a Participating Employer by an Employee or Dependent unless, as a condition precedent thereto, the Employee or Dependent for whom benefits are claimed ... shall have fully complied with all the terms and provisions of this Plan, nor until the claims for such benefits has been denied in writing by the Plan Administrator.

Nationwide Insurance Companies and Affiliates Employee Health Care Plan, § 13.1.13 (attached as Ex. 2 to Defendants' Motion for Summary Judgment). The plan further provides that "[u]pon receipt of a denial of a claim, the Employee or Dependent may request a review of the denial by filing a written appeal with the Plan Administrator within sixty (60) days." Nationwide Insurance Companies and Affiliates Employee Health Care Plan, § 13.1.3(2) (attached as Ex. 1 to Defendants' Motion for Summary Judgment). In addition, Nationwide prints on every explanation of benefits form, which are sent to the insured following a decision on a claim, the following in bold-face:

> If you disagree with the decision we made on your claim, you have the right to an appeal. Your request should be in writing, within 60 days from the time you receive this explanation of benefits. Upon receipt of your request we will review your claim and advise you of our decision.

(*See, e.g.,* Scott Aff. of November 4, 1996 Ex. 3).

In response, plaintiff states that he has largely complied with defendants' appeals process, and to the extent he has not, the process is both futile and inadequate. Plaintiff also asserts that administrative exhaustion should not be required because of the nature of certain of his claims.

## *IV.*

■ This Court will initially examine the evidence of administrative exhaustion as it relates to plaintiff's claims regarding Nationwide's use of reasonable and customary limitations on coverage.

Relying on the materials plaintiff has provided to the Court in opposition to the motion for summary judgment, it appears that Mr. Fallick began to act on his dissatisfaction with the processing of his claims in the Spring of 1993. At that time, plaintiff asserts that he contacted Artie Scott, a Nationwide Insurance Employee Claims Manager, regarding the use of reasonable and customary limitations in the processing of claims for reimbursement of certain medical procedures performed in 1991, 1992 and the early part of 1993. Plaintiff supplies no documentation relating to this contact with Ms. Scott, nor does he relate further the substance of this communication. Receiving what he deemed to be an insufficient response, plaintiff solicited the assistance of the State of New York Insurance Department ("NYID"). This was the first in a series of correspondence that would last over the next couple of years. Plaintiff supplies no documentation relating to this initial contact with the NYID.

On or about September 8, 1993, plaintiff received a copy of a letter sent by Lloyd Lauver, a Nationwide Insurance Benefits Administration Manager, to Lester Grimmell, Supervisor of the Consumer Services Bureau at the NYID, which explains that Nationwide Life Insurance receives its health care charge data from a non-profit research orga-

nization (the HIAA). This data is arranged by the zip code of the service provider and the specific numeric code assigned to a particular procedure. Mr. Lauver indicates that Mr. Fallick's claims were properly processed under reasonable and customary guidelines.

On or about November 1, 1993, plaintiff received a copy of a letter from Ms. Scott to Merline Smith at NYID's Consumer Services Bureau which indicated that the charges that plaintiff incurred in 1991, 1992 and early 1993 were for services performed in area 105 (this area is defined by all zip codes beginning with the first three digits 1–0–5). Ms. Scott's letter then lists seventeen of the charges incurred during this time period, the amounts of the charges, and the extent to which they were in excess of reasonable and customary, given that charges at or below the 85th percentile in area 105 for the relevant procedures were considered reasonable and were paid in full.[1] The portions of those charges that exceeded the 85th percentile were excluded from the coverage of the policy. In comparing the reasonable and customary limitations applicable to area 105 to the amount of those various charges that were actually allowed, the NYID determined that the reimbursement for eight charges had been miscalculated in the total amount of $138.00. That is, with respect to those eight charges, the amount allowed Mr. Fallick was less than the reasonable and customary amount for area 105. The cause of the miscalculations is not clear from the materials presented by the plaintiff. Nonetheless, the NYID contacted Nationwide about the discrepancies and on November 22, 1993 plaintiff was reimbursed an additional $138.00. Plaintiff complains at this point that "although Nationwide had reconsidered *certain* of my claims, it had not ceased to utilize faulty R & C rates in processing my claims[.]" (Fallick Aff. of March 25, 1996 at ¶ 7) (emphasis in original). However, Mr. Fallick did not address this concern to defendant in writing. Instead, on January 4, 1994, plaintiff drafted a letter to Ms. Smith at the NYID in which he points out that no mention of the HIAA or the percentile payment scheme exists in his policy. Mr. Fallick also

states that "[f]ee schedules are set by using the providers zip code, regardless of the provider's educational background, specialization, experience or ability." (Fallick Aff. of March 25, 1996 Ex. 5). It appears that this letter is the last time plaintiff made any communication specifically regarding the charges he incurred in 1991, 1992 and early 1993. As noted above, the communication was not to Nationwide nor is there any evidence that any of Fallick's claims had been reduced or denied because of the matters he complained of in this letter.

It is relevant at this time to point out that to oppose the motion for summary judgment, plaintiff has the responsibility to come forward with evidence tending to create a genuine issue of material fact as to whether he has exhausted administrative remedies. This Court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480 (6th Cir.1989). Rather, the Court's analysis of the evidence presented on summary judgment is confined to factual issues supported by specific references to the record. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir.1992) (facts presented and designated by the parties are the facts at hand to be dealt with by the trial court). The nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *Guarino*, 980 F.2d at 406; *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989) (" [T]he designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies."). With this in mind, the information provided by plaintiff surrounding his objections to the reimbursement he received for medical procedures performed in 1991, 1992 and the early part of 1993 does not indicate that he exhausted his administrative remedies, or that he ever even prosecuted an appeal complying with Nationwide's procedure that addressed the issues

1. It appears that on February 6, 1993, Nationwide began paying claims as reasonable and

customary at the 90th percentile level in each geographic area.

that he now brings in this action. Instead, it appears that the NYID brought a miscalculation to the attention of Nationwide which it acknowledged and corrected. The only place where issues resembling the ones in this action are mentioned during this time frame is in Mr. Fallick's subsequent letter of January 4, 1994 where plaintiff complains to the NYID that Nationwide improperly uses a percentile system of payment, improperly employs data received from the HIAA and makes no effort to differentiate the professional standing of various health care providers. (Fallick Aff. of March 25, 1996 Ex. 5 (*compare with* Amended Class Action Complaint at ¶¶ 13–21)). Plaintiff contends that this triangular dialogue consisting of communications between himself and the NYID, and basically undocumented alleged transmissions of information from the NYID to Nationwide, complies with appeals process in the Nationwide Insurance Companies and Affiliates Employee Health Care Plan § 13.1.3(2). Plaintiff states that to hold otherwise would be a "reliance on hyper-technicalities [that] is plainly absurd in the context of this case." (Plaintiff's Memorandum in Opposition at 4).

It has been held that adherence to ERISA's strict rules regarding the exhaustion of administrative remedies may be inappropriate when, for example, the beneficiary of a plan was not an employee of the plan sponsor and not acquainted with the terms of the plan. *Metropolitan Life Ins. Co. v. Person*, 805 F.Supp. 1411, 1419 (E.D.Mich.1992). However, plaintiff in this case was an employee of Nationwide Mutual and does not contend that he was unfamiliar with Nationwide's claims review procedures. To allow an employee, who is familiar with his policy and its requirements, to ignore its express terms with impunity is to eviscerate the requirement that an ERISA claimant exhaust the appeals process articulated in the plan. The more a claimant is allowed to deviate from the letter of the policy, the greater the purposes that the exhaustion requirement is designed to achieve are frustrated. *See, e.g., Moffitt v. Whittle Communications, L.P.*, 895 F.Supp. 961, 969 (E.D.Tenn.1995)(holding that allowing the participant to ignore time restraints in an administrative appeals proce-

dure frustrates the purposes of administrative exhaustion). Mr. Fallick was not free to conjure what he felt to be a functional equivalent to Nationwide's administrative appeals policy, and his communications with the NYID do not constitute appeals under the administrative procedures outlined in the Nationwide Plans.

Even if this Court were to treat Mr. Fallick's correspondence with the NYID as a formal written appeal to Nationwide, the January 4, 1994 letter is simply defective in that regard. It does not clearly relate to any specific charge when it discusses percentile payments, the use of HIAA data, or the lack of attention to the professional standing of the service provider. (Fallick Aff. of March 25, 1996 Ex. 5). Further, the letter does not state how any of those alleged aspects of Nationwide's claims process adversely impacted any particular reimbursement decision that Nationwide made. *Id.* Finally, the letter is not asking Nationwide to review any reimbursement decision, it is apparently requesting that the department take some sort of regulatory enforcement action. *Id.* Plaintiff did not exhaust administrative remedies with respect to the medical charges he incurred in 1991, 1992 and early 1993.

Defendants discuss the denial of a charge submitted by plaintiff in July 1993 in the amount of $125.00. (Scott Aff. of November 4, 1996 Ex. 5). Defendants denied the charge for being in excess of the maximum allowed by the plan, but not for being in excess of reasonable and customary. *Id.* Plaintiff does not direct the Court to any evidence relating to this charge. On or about August 3, 1993, plaintiff wrote to Belinda Martin about the claim denial. Nationwide reconsidered the denial and concluded that the charge was covered by the plan but that $25.00 was in excess of reasonable and customary. Nationwide's action with respect to this charge gave plaintiff a perfect opportunity to challenge the application of reasonable and customary limits, but he did not appeal the decision.

In his January 4, 1994 letter to the NYID, Mr. Fallick also discusses a new charge for which he felt he was under-reimbursed. On

November 22, 1993, Mr. Fallick's wife, Astrid Fallick, was examined at the Mt. Kisco Medical Center by Dr. Charles Brown. Dr. Brown billed $100.00 for the examination. Nationwide treated $25.00 of that charge as in excess of reasonable and customary. Plaintiff was apparently informed in a telephone conversation with Ms. Scott that Dr. Brown had submitted a procedure code indicating that the examination only lasted fifteen minutes. Mr. Fallick insisted that the examination took at least a half an hour. Ms. Scott suggested that an incorrect code may have been submitted by Dr. Brown, and that plaintiff should discuss the subject with him. Ms. Scott further indicated that Nationwide would be willing to consider any additional information from Dr. Brown in the form of a narrative or a corrected code. In a letter from Ms. Scott to Ms. Smith dated March 3, 1994, Ms. Scott states that no additional information was ever received by her office for review. (Fallick Aff. of March 25, 1996 Ex. 6). Plaintiff does not produce any evidence that he discussed the matter with Dr. Brown or that he made any effort to prosecute a written appeal with Nationwide on this claim. Even if he had, plaintiff appears to dispute the characterization of the examination as having only taken fifteen minutes, which is a coding error committed by the service provider, not Nationwide. (Fallick Aff. of March 25, 1996 Ex. 5 ("[o]ne can see from the attached invoice ... that his initial examination and discussion as to my wife's condition took more than fifteen minutes."). As such, it is not relevant to the claims based on Nationwide's reasonable and customary policy which are at issue in this case. Plaintiff now makes the statement *"[t]he bill should have been paid under the original code;* thus, a 'corrected code' would have been inappropriate." (Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment at 22 (emphasis in original)). However, plaintiff presents no evidence that his sentiment regarding the application of reasonable and customary limits to this charge was ever addressed to Nationwide before the commencement of this litigation.

The next charge with which plaintiff takes issue was incurred on March 30, 1994. Area code 104, the first three digits of the zip code for Bronx County, New York, was used to process the charge for a laboratory procedure, even though the laboratory where the work was performed is located in New Jersey. Using the data for area code 104, Nationwide determined that the $60.10 charge was in excess of reasonable and customary in the amount of $8.10. (Fallick Aff. of March 25, 1996 Ex. 8).

It is not clear whether plaintiff pursued the administrative appeals process articulated in his policy with respect to this claim. Plaintiff points out that his grievance is characterized as an "appeal" by Ms. Scott who wrote on behalf of Nationwide in her letter to the NYID on March 19, 1994. (Fallick Aff. of March 25, 1996 Ex. 7). However, the procedure was apparently performed on March 30, 1994, according to Nationwide's explanation of benefits for the charge. (Fallick Aff. of March 25, 1996 Ex. 8). Therefore, Ms. Scott's comment could not have been in reference to this charge. It is possible that Ms. Scott was referring loosely to her continuing correspondence with the NYID that had transpired prior to that date. It is also possible that at some point Mr. Fallick prosecuted an appeal that complied with the procedure set forth in the plan. If that is the case, this Court has no way of knowing to what claims or charges the appeal was related, whether the issues raised in that appeal embrace the issues brought by plaintiff in this lawsuit, or the result of that appeal. On this motion for summary judgment, plaintiff has the duty to establish that he has complied with the administrative review process, but he has produced no documentation of any written appeal to Nationwide with respect to this charge.

On August 22, 1994, Paul Brozdowski, then counsel for plaintiff, wrote a letter to the NYID which inquired into the department's legal authority to review reasonable and customary limitations imposed by insurers. Mr. Brozdowski also set forth to the NYID the circumstances surrounding the lab work which was the subject of plaintiff's most recent grievance. Mr. Brozdowski points out to the NYID that not only is the laboratory in New Jersey, but Mr. Fallick's residence

and the doctor's office are in Westchester County, New York, neither of which are within area 104. (Fallick Aff. of March 25, 1996 Ex. 9). The NYID apparently had some communication with Nationwide concerning this issue. On September 15, 1994, Ms. Scott wrote the NYID on behalf of Nationwide, acknowledging that a mistake had been made and that the data used for processing this charge was taken from the wrong area. According to HIAA data, the reasonable and customary charge for the lab procedure at issue was sufficiently higher in the New Jersey area such that the $8.10 should not have been disallowed as in excess of reasonable and customary. Enclosed with the letter was a copy of a check, dated September 12, 1994, reflecting the correction of the error. (Fallick Aff. of March 25, 1996 Ex. 11; see also Fallick Aff. of March 25, 1996 Ex. 17). At this point, plaintiff complains that Nationwide never explained why it used area 104 to process the charge in the first place. This complaint is purely hypothetical as it relates to the March 30, 1994 lab work because that charge was fully reimbursed once Nationwide was apprised of the location of the laboratory. Indeed, no part of that charge was left under-reimbursed once Nationwide looked to the rates charged for that work in New Jersey. Further, instead of directing this issue to Nationwide via its internal appellate procedure, Fallick apparently had his attorney send two subsequent letters to the NYID. In the second of those letters, dated December 12, 1994, Mr. Brozdowski states that Nationwide still employs the reasonable and customary charge limitation to its coverage. He encloses, evidently as an example, the Nationwide explanation of benefits form for the reimbursement of ten charges relating to a number of visits to a cardiologist, incurred between October 8 and October 25, 1994, of which five were held to be in excess of reasonable and customary. (Fallick Aff. of March 25, 1996 Ex. 12).

On February 2, 1995, Ms. Scott sent a letter to Ms. Smith at the NYID which explained the use of area code 104:

> We allocated the UCR amount in 104 because the conversion table which accompanied the medical data we used indicates that services rendered in zip code areas 104, 105, 106 and 108 ALL fall within that geographic code.

(Fallick Aff. of March 25, 1996 Ex. 13 (emphasis in original)). On April 14, 1995, Mr. Brozdowski asked Ms. Scott at Nationwide for the HIAA data underlying her above letter. Ms. Scott responded by indicating that she was restrained by Nationwide's contract with the HIAA from releasing such data.

On or about February 20, 1995, plaintiff wrote to Mr. David Handel, a Benefits Administrator at Nationwide, regarding the laboratory charge for which area 104 was erroneously used. Plaintiff states that in a subsequent conversation with Mr. Handel, Mr. Handel indicated that when the HIAA does not have enough data for a particular zip code, it rounds downward to the next nearest zip code area. For example, if the HIAA had no data for Westchester County, New York (which is area 105), then the data in area 104, Bronx County, New York, would be used. Convinced that Nationwide had done this in initially processing the lab charge of March 30, 1994, and suspecting that it was a practice that Nationwide was employing when processing all of his charges, plaintiff wrote one final letter to Mr. Handel on April 3, 1995. In that letter, plaintiff concluded "I can now assume that all services rendered in Westchester County get the same ratings as Bronx County, a borough of the City of New York." (Fallick Aff. of March 25, 1996 Ex. 18).

Plaintiff was clearly communicating both directly and indirectly with Nationwide for the purpose of gathering information on the potential misapplication of the reasonable and customary limitation. However, such a denial was never the subject of a proper appeal. Nationwide was never given the opportunity to reassess the way it was processing plaintiff's charges vis-a-vis the reasonable and customary limitation applicable to area 105 during that period of time because plaintiff never brought any alleged deficiencies in Nationwide's calculation method to Nationwide's attention in the context of the appeal of a charge. It is uncertain what the result

would have been had plaintiff endeavored to do so.

Mr. Handel responded to plaintiff by letter dated May 9, 1995 stating that:

Apparently, when the March, 1994 charge referred to in your letter was incurred, UCR levels in zip code 105 were the same as for zip code 104. It is not appropriate to assume that they will always be the same, though, because UCR expense information is updated every sixth months. Over time, relationships between UCR levels and zip codes can change. The objective is for each area to reflect its own UCR profile. Any similarity to another area or areas is coincidental.

(Fallick Aff. of March 25, 1996 Ex. 19). In response to this explanation, plaintiff complains that Nationwide does not indicate which zip code area it is using to calculate reasonable and customary charges on benefit forms when it is paying benefits, so it is impossible to tell whether the "correct code is being used to process my claims." (Fallick Aff. of March 25, 1996 at ¶ 15). Here again, this criticism does not appear in any correspondence between plaintiff and Nationwide, or in any appeal of a denial of benefits.

Meanwhile, on April 27, 1995, Mr. Brozdowski contacted Ms. Scott to request information about three of plaintiff's charges that were treated as in excess of reasonable and customary in the aggregate amount of $85.00. These were three charges of five which totaled $1300.00 for services rendered by Dr. Harold Stevelman in Westchester County between October 5 and October 7, 1994. Plaintiff's counsel also asked for HIAA data sheets and conversion tables. (Fallick Aff. of March 25, 1996 Ex. 20). Ms. Scott responded by reiterating the information on Nationwide's explanation of benefits form, that three charges for services rendered by Dr. Stevelman were in excess of reasonable and customary in the total amount of $85.00. Ms. Scott again stated that she was precluded by Nationwide's contract with the HIAA from releasing HIAA data. (Fallick Aff. of March 25, 1996 Ex. 21).

■ Ms. Scott was essentially responsive to Mr. Brozdowski's request, he asked for an explanation and he received one. Asking for an explanation and information about the payment of a claim is simply not the same as assigning error to the amount that was paid and demanding its review. *See Franklin H. Williams Ins. Trust v. Travelers Ins. Co.,* 847 F.Supp. 23, 27 (S.D.N.Y.1994) *rev'd on other grounds* 50 F.3d 144 (2d Cir.1995) (simply inquiring as to the reason for the insurance company's adverse claim decision did not exhaust plaintiff's administrative remedies).

■ Plaintiff does not assert that the denial of the request for HIAA data is in violation of 29 U.S.C. § 1132(c) relating to a plan administrator's duty to provide participant certain types of information upon request. Further, although Mr. Brozdowski's request for information on the processing of this claim was denied, this alone does not excuse compliance with Nationwide's administrative review process. *See McFarland v. Union Cent. Life Ins. Co.,* 907 F.Supp. 1153, 1161 (E.D.Tenn.1995) (claimant under ERISA plan was not entitled to forego resort to administrative review before bringing a court action simply because administrator declined to provide him with copies of documentation requested) Ms. Scott's refusal to provide confidential information about HIAA data did not preclude Mr. Fallick from asserting that the charge was under-reimbursed and was indeed reasonable and customary. Mr. Fallick makes no reference to any further effort to obtain relief on this claim, but concludes that the claim remains outstanding. (Fallick Aff. of March 25, 1996 at ¶ 16).

Plaintiff has produced no evidence that he ever wrote to Nationwide about a particular charge for which he felt he had been under-reimbursed and asserted that because of the lack of sufficient data from the HIAA, the reasonable and customary levels from a different and less affluent zip code area (*i.e.* area 104 as opposed to area 105) had been used to process the claim, resulting in under-reimbursement in contravention of the terms of the plan. Had he wanted to do so, plaintiff could have obtained a statement from his service provider that the particular charge that was not covered in full was indeed reasonable and customary. Plaintiff could have

contacted other nearby service providers and inquired into their charges for the same services. Such information could have been assembled and presented in an appeal as a compelling reason for Nationwide to reconsider this aspect of its reasonable and customary policy, or for Nationwide to adjust its calculations to accommodate the additional data. Nationwide has indicated a willingness to consider such information. (Scott Aff. of November 4, 1996 at ¶ 4). As earlier discussed, Nationwide never had the opportunity to reassess the way it was processing plaintiff's Westchester County (area 105) medical charges because plaintiff did not point out any alleged deficiencies in Nationwide's calculation method in the context of the appeal of a charge (including the charges for services rendered by Dr. Stevelman). Again, it is uncertain what the result might have been had plaintiff done so.

This Court will turn now to the evidence of administrative exhaustion as it relates to plaintiff's claims regarding Nationwide's alleged misdirection of payments.

Plaintiff alleges that defendants' claim form allows the participant to indicate when the participant has already paid the provider. Plaintiff asserts that even when the participant indicates on the claim form that he or she has paid the provider, defendants ignore the claim form and routinely forward payment to the provider. Plaintiff alleges that defendants do so in order to take advantage of the time value of money while the error is being corrected. (See Amended Class Action Complaint at ¶¶ 22–25).

Plaintiff makes this general and conclusory statement about his claims based on misdirection of payments:

In addition, Nationwide's claim form allows me the option of directing that the reimbursement payment be paid to me in those instances where the service provider has already been paid. However, Nationwide has repeatedly and consistently ignored these directions and sent checks to service providers which has delayed my receiving payment. Despite numerous complaints to Nationwide, Nationwide continues to misdirect reimbursement checks to the service providers in contravention of its own forms and my specific requests.

(Fallick Aff. of March 25, 1996 at ¶ 18). Plaintiff Is general statements, in the absence of supporting documentation, are irrelevant. Plaintiff's counsel Aaron Tandy supplies several exhibits ostensibly related to this issue. Exhibit D appears to be a general written inquiry by plaintiff regarding the duration of the assignment of benefits to a service provider. Exhibit E appears to be a handwritten request for benefits or an explanation of a request for benefits. This exhibit is neither clearly identified nor is it clearly discussing charges which were the subject of the type of misdirection of payments that plaintiff alleges. Finally, exhibit F appears to be an internal Nationwide memorandum outlining a special procedure to be used when a claimant has not clearly indicated whether an assignment to the service provider is in place. These documents do not support a finding that plaintiff has exhausted administrative remedies with respect to this type of claim.

According to defendants, not including charges submitted on behalf of his wife, plaintiff has submitted claims representing more than five hundred forty charges for medical services rendered since January 1, 1993. (Scott Aff. of November 4, 1996 at ¶ 9). Prior to the commencement of this litigation, the only communication which plaintiff had with defendants regarding the alleged misdirection of a payment to a service provider occurred in early 1995. This was apparently a telephone conversation which was never reduced to writing, therefore it was in contravention of Nationwide's administrative appellate procedure. This communication concerned charges incurred at Danbury Hospital. Nationwide processed the Danbury Hospital charges even though a completed claims form was not submitted by Mr. Fallick and he had not otherwise indicated that he had already paid the service provider. (Scott Aff. of November 4, 1996 at ¶ 8). Further, defendants made notification to plaintiff in writing, to which there was never a response, that a check had been issued to the Danbury Hospital on December 2, 1994 and was cashed on December 14, 1994. Plaintiff has produced no evidence to

the contrary. This is not the type of misdirection situation that plaintiff describes in his amended complaint. Nationwide did not ignore one of its preprinted claims forms. Nationwide's check was cashed so Nationwide did not "play the float," and, in any event, plaintiff did not prosecute a proper administrative appeal.

Plaintiff commenced this action in November 1995 and filed his amended complaint January 26, 1996. There are apparently two payment misdirection incidents which occurred after that date. Plaintiff relates the following:

> During December, 1995, my wife, Astrid Fallick, received physical therapy twice weekly under the supervision of her doctor. During this period, I paid Jon Best, Jr., a physical therapist, weekly by personal check. I mailed invoices to Mrs. Artie Scott–Dawson, a Nationwide Insurance Employee Claims Manager, requesting reimbursement for these payments and directing that said reimbursement be paid to myself. On or about February 8, 1996, Jon Best, Jr. received a check from the Enterprise Group Life and Health Operations in payment for services to my wife for which he was previously paid directly by myself.

(Fallick Aff. of July 9, 1996 at ¶ 6(a)). Plaintiff submits no documentation surrounding this incident beyond a copy of the check issued to Jon Best, Jr. and the accompanying remittance advice. (Fallick Aff. of July 9, 1996 Ex. 2). As an initial matter, this would appear to be a claim that belongs to Mr. Fallick's wife who is not a plaintiff in this action. It is not clear whether plaintiff submitted a completed claims form to request reimbursement of these charges. Nevertheless, defendants indicate that upon being notified in writing that the payment had been misdirected, they issued a check to plaintiff. (Scott Aff. of November 4, 1996 at ¶ 7). Plaintiff provides no evidence of when he sent the invoices to Ms. Scott or when he filed his claim for benefits. Further, plaintiff provides no evidence of when he was paid by Nationwide.

The second incident occurred in August 1996, when plaintiff's counsel informed Nationwide that payment was improperly sent to a dentist, Ronald Friedman. Plaintiff's counsel notified defendant's counsel by letter on August 19, 1996, and a check was sent to plaintiff. (Sferra Aff. of November 4, 1996 at ¶ 4 and Ex. 2). Insofar as this letter attempts to republish alleged statements made by Mr. Fallick to his attorney, it is hearsay. It is noteworthy that this letter, as well as a copy of the check to Dr. Friedman and a rather illegible pre-treatment estimate, are all appended to defendants' motion for summary judgment. Plaintiff does not direct this Court to any evidence regarding this incident. It is not clear whether plaintiff ever submitted a claim form with respect to this charge. Plaintiff provides no evidence of when he filed this claim for benefits and plaintiff provides no evidence of when he was paid by Nationwide.

Exhaustion is a *prerequisite to commencing suit in federal court. See, e.g., Costantino v. TRW, Inc.,* 13 F.3d 969, 974 (6th Cir. 1994) (quoting *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 986 (6th Cir.1991)); *Baxter v. CA. Muer Corp.,* 941 F.2d 451, 453 (6th Cir.1991); *Mason v. Continental Group, Inc.,* 763 F.2d 1219, 1227 (11th Cir.1985), *cert. denied,* 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986); *Moffitt v. Whittle Communications, L.P.,* 895 F.Supp. 961, 969 (E.D.Tenn.1995).

Assuming defendants' uncontradicted rendition of the facts is true, not only is it clear that administrative remedies have not been exhausted before commencement of suit on this issue, it also appears that plaintiff is unable to document any situation which befell him prior to the commencement of this action that conforms to the nature of the misdirection claims he alleges in his amended complaint. (*See* Amended Class Action Complaint at ¶¶ 22–25). Plaintiff does not allege *any* specific misdirection incident in his amended complaint and plaintiff has not supplemented his amended complaint to include specific occurrences subsequent to the commencement of this action. *See* Fed.R.Civ.P. 15(d).

Even if this Court were to consider the two incidents which occurred after plaintiff filed this suit, and were to assume that they

factually conformed with the allegations in the amended complaint, it appears that those claims were timely resolved in conformance with the claims review procedure in the Nationwide Plans. Plaintiff does not contend that he was not timely paid when he directed Nationwide's attention to those errors. Defendants have ninety days during which to respond to claims for benefits under the Nationwide Plans. Nationwide Insurance Companies and Affiliates Employee Health Care Plan, § 13.1.3(2) (attached as Ex. 1 to Defendants' Motion for Summary Judgment). Under the terms of the Nationwide Plans, plaintiff is not entitled to interest during this time period. In neither case does plaintiff contend that the misdirection of payments was corrected in greater than ninety days from the date he filed his initial claim for benefits. Nor could he prevail on such a contention in the absence of evidence showing when he filed his initial claims and when he was ultimately paid. Therefore, even if this Court were to consider these two incidents, it does not appear that plaintiff has a viable claim under the terms of the Nationwide Plans which survives the corrections that were the result of plaintiff's complaints. *See Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (participant not entitled to additional extra-contractual damages for improper or untimely processing of claims).

"There is a strong federal interest encouraging private resolution of ERISA disputes." *Makar v. Health Care Corp. of Mid–Atlantic,* 872 F.2d 80, 82 (4th Cir.1989). The Sixth Circuit Court of Appeals in *Costantino* set forth the purposes of administrative exhaustion:

(1) To help reduce the number of frivolous law-suits under ERISA.

(2) To promote the consistent treatment of claims for benefits.

(3) To provide a nonadversarial method of claims settlement.

(4) To minimize the costs of claims settlement for all concerned.

(5) To enhance the ability of trustees of benefit plans to expertly and efficiently manage their funds by preventing prema-

ture judicial intervention in their decision-making processes.

(6) To enhance the ability of trustees of benefit plans to correct their errors.

(7) To enhance the ability of trustees of benefit plans to interpret plan provisions.

(8) To help assemble a factual record which will assist a court in reviewing the fiduciaries' actions.

*Costantino,* 13 F.3d at 975 (quoting *Makar,* 872 F.2d at 83) (the court in *Makar* also states that "[i]t would be 'anomalous' if the same reasons which led Congress to require plans to provide remedies for ERISA claimants did not lead courts to see that those remedies are regularly utilized.").

Several of the purposes articulated in *Costantino* are furthered by requiring plaintiff to exhaust his administrative remedies before commencing this action. Nationwide's administrative review procedure provides a method of claims settlement which is certainly less adversarial than a federal lawsuit and is far less demanding on the resources of both Nationwide and Mr. Fallick. The pursuit of administrative remedies in this case would have given Nationwide the opportunity to expertly and efficiently reconsider and perhaps reinterpret the suitability of its method of calculating reasonable and customary limits and the impact of that method on the payment of particular charges. Nationwide has shown a willingness to correct errors when they are actually brought to its attention. For example, the $138.00 miscalculation repaid on November 22, 1993 and the $8.10 for lab work initially excluded from coverage as in excess of reasonable and customary, but for which Nationwide paid additional reimbursement on September 12, 1994. Plaintiff cites these corrections as evidence that he did appeal charges. Assuming *arguendo* that they can be considered evidence of proper appeals, these incidents do *not* involve appeals attacking the alleged wrong-doings articulated in the amended complaint, *to wit:* the improper grouping of geographic areas when one area has insufficient data, or the assertion that the amount paid plaintiff was too low because reasonable and customary charges are set at a certain percentile, or that Nationwide ignored the professional

qualifications of plaintiff's service provider. (*See* Amended Class Action Complaint at ¶¶ 13–21). If Nationwide committed errors of this nature in processing plaintiff's charges, it was not given the opportunity it deserved to correct them before the instigation of this lawsuit. Payment of benefits to the wrong payee will occasionally occur as well, given the volume of charges processed by Nationwide. These errors are the type which Nationwide deserves the chance to correct before being sued. Finally, if plaintiff had prosecuted a formal appeal in compliance with the policy, a factual record would have been assembled that would assist this Court. As an excellent example, such an appeal, clearly comprising the claims in this action, would have been memorialized so that this Court would not now be required to wade through a morass of extraneous documents to resolve the administrative exhaustion issue at hand.

Having completed a comprehensive review of the evidence produced by plaintiff to create a genuine issue of material fact as to whether he has exhausted his administrative remedies, this Court finds that evidence lacking. Plaintiff has not produced documentation of a written challenge to Nationwide of the under-reimbursement of a charge which is based upon any of the three alleged deficiencies in Nationwide's reasonable and customary limitations which form the bases of his complaint. With respect to his claims regarding the improper misdirection of payments, plaintiff has not documented that he has suffered, prior to the commencement of this action, the type of incident that he alleges in his amended complaint. Therefore, he cannot have exhausted administrative remedies with respect to this class of claims before filing this suit. Accordingly, plaintiff cannot be permitted to proceed on any of these claims unless this Court excuses the exhaustion requirement in this case.

Traditionally, when administrative exhaustion is required, there is an exception for instances when resort to the administrative process would prove futile or the remedy available would be inadequate. *Costantino,* 13 F.3d at 974. Plaintiff asserts that he should be excused from compliance with Na-

tionwide's administrative appeals process because compliance would have been futile.

Plaintiff asserts that exhaustion of administrative remedies would serve no purpose in this action because "there is no dispute that Nationwide will not change its policy voluntarily." (Plaintiff's Memorandum in Opposition page 5). Plaintiff cites *Costantino, supra,* for the proposition that exhaustion is not required where an appeal would not alter the results of the administrator's decision. In *Costantino,* however, the plaintiffs were challenging the legality of an amended plan which had the effect of decreasing the participants' accrued benefits in violation of 29 U.S.C. § 1054(g). *Costantino,* 13 F.3d at 971. Therefore, defendant's characterization of the dispute in that case as one of differing interpretations of the provisions of the plan, which the administrative appellate scheme is most effective at resolving, was improper. *Id.* at 974–975. Instead, the question in that case was whether the amendment was legal under 29 U.S.C. § 1054(g). *Id.* at 975. In contrast, the central issue of plaintiff's claim for benefits here is the propriety of Nationwide's calculation of reasonable and customary limitations. Whether Nationwide's method impermissibly deviates from the terms of the plan is chiefly one of interpretation of those terms. That interpretation, of course, must be assessed in the context of the unique factual posture of each claim, all of the information relevant to each claim with which Nationwide was provided and the ultimate manner in which Nationwide calculated reimbursement of each claim. Since plaintiff never indicated to Nationwide in an appeal that its interpretation was improper, Nationwide was never given the opportunity to reconsider the propriety of its interpretation. Indeed, this Court finds that the policies underlying the exhaustion requirement articulated in *Costantino* command its application to plaintiff in this case. *Id.* and discussion *supra.*

▮ Plaintiff simply asserts that an appeal challenging Nationwide's calculation of reasonable and customary limits would have been unavailing. In response, defendants assert that they are always open to considering evidence that their calculations are improper.

Further, Nationwide has demonstrated repeatedly a willingness to correct errors which have been brought to its attention. With respect to the misdirection claims, when two instances of payment misdirections occurred after the commencement of this lawsuit, plaintiff's complaints apparently received prompt attention and resulted in payment directly to Mr. Fallick in conformance with the terms of the Nationwide Plans. These incidents illustrate the efficacy of Nationwide's administrative review procedure, not its futility.

Plaintiff's blanket assertion that administrative appeals wouldn't work, unsupported by evidence, is simply insufficient to entitle him to ignore the administrative appellate process. *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir.1996) (in order to come under futility exception to exhaustion of administrative remedies requirement, plaintiff must show that it is certain that his or her claim will be denied on appeal, not merely that he or she doubts that appeal will result in a different decision); *Hickey v. Digital Equipment Corp.*, 43 F.3d 941 (4th Cir.1995) (plaintiff must present a clear and positive showing of futility); *Makar*, 872 F.2d at 83; *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 826 (1st Cir.1988), *cert denied*, 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249.

With respect to the misdirection claims, plaintiff asserts that pursuit of administrative remedies would have been both futile and inadequate because even when alerted to a misdirected payment, Nationwide merely sends a new check to the participant and does not pay interest for the additional delay. There are several problems with this contention. First, plaintiff does not allege or establish the occurrence of an incident prior to the commencement of this litigation that answers to his description of defendants' alleged practices in his amended complaint. That being the case, plaintiff has not had the opportunity to test whether an appeal assigning error to such a practice would be futile. Second, under the terms of the Nationwide Plans, plaintiff is not entitled to interest during the first ninety days after the receipt of a claim for benefits. Therefore, the correction of a misdirected payment within that time does not give rise to a claim for interest under the terms of the plan. Plaintiff does not contend or provide any evidence that he was ever paid later than ninety days after filing a claim for benefits which were subsequently misdirected. Since plaintiff has received the full benefits to which he was entitled under the Nationwide Plans with respect to these claims, he cannot contend that the administrative remedy was futile or inadequate. Third, as discussed above, Nationwide has demonstrated responsiveness when misdirected payments are brought to its attention, in those cases timely redirecting benefits due under the plan to Mr. Fallick. Although those incidents occurred following the filing of this lawsuit, and thus are not relevant to whether Mr. Fallick had the privilege of commencing the suit, they do indicate that Nationwide's review procedure as it relates to misdirected payments is not futile. Finally, plaintiff has only shown, with the help of defendants in directing the Court to the relevant portions of the record, that payment misdirections of any sort have occurred three times. Plaintiff has apparently submitted over five hundred forty charges for medical services on behalf of himself alone since January 1, 1993. In showing only three misdirected payments out of well over five hundred charges, plaintiff has failed to establish a genuine issue of material fact as to his characterization of defendants' behavior as deliberate. Therefore, plaintiff was not faced with the sort of futility present when a claimant is forced to appeal the actions of a willful wrongdoer directly to that same wrongdoer.

Plaintiff has not clearly shown that resort to the administrative remedies available to him would have been futile or inadequate.

Plaintiff next asserts that exhaustion of administrative remedies is only required for claims for benefits due under 29 U.S.C. § 1132(a)(1)(B). Although plaintiff does bring a claim for benefits under that section, he contends that even in the absence of his exhaustion of administrative remedies he may proceed with his claims for breach of fiduciary duty under ERISA and for estoppel and other equitable relief based on the same factual allegations. Plaintiff cites *Stumpf v.*

*Cincinnati, Inc.,* 863 F.Supp. 592 (S.D.Ohio 1994), in which the plaintiff brought suit under 29 U.S.C. § 1140, alleging that his employer terminated his employment in order to avoid providing him benefits under the plan. The court stated that:

> When a plan participant claims that he or she has unjustly been denied benefits, it is appropriate to require participants first to address their complaints to the fiduciaries to whom Congress, in Section 503, assigned the primary responsibility. This ensures that the appeals procedures mandated by Congress will be employed, permits officials of benefit plans to meet the responsibilities properly entrusted to them, encourages the consistent treatment of claims for benefits, minimizes the costs and delays of claim settlement in a nonadversarial setting, and creates a record of the plan's rationales for denial of the claim.... However, when the claimant's position is that his or her federal rights guaranteed by ERISA have been violated, these considerations are simply inapposite. Unlike a claim for benefits brought pursuant to a benefits plan, a section 510 [29 U.S.C. § 1140] claim asserts a statutory right which plan fiduciaries have no expertise in interpreting. Accordingly, one of the primary justifications for an exhaustion requirement in other contexts, deference to administrative expertise is simply absent. Indeed, there is a strong interest in judicial resolution of these claims, for the purpose of providing a consistent source of law to help plan fiduciaries and participants predict the legality of proposed actions. Moreover, statutory interpretation is not only the obligation of the courts, it is a matter within their particular expertise.

*Id.* at 597–98 (quoting *Zipf v. American Tel. and Tel. Co.,* 799 F.2d 889, 892–93 (3d Cir. 1986) (internal citations omitted)). Plaintiff also cites other cases with similar holdings. *Garry v. TRW, Inc.,* 603 F.Supp. 157, 163 (N.D.Ohio 1985) ("exhaustion of administrative remedies is not a prerequisite to bringing a civil action to redress violations of § 510 [29 U.S.C. § 1140] of ERISA"); *Amaro v. Continental Can Co.,* 724 F.2d 747, 750–52 (9th Cir.1984) (also holding that the exhaustion of administrative remedies is not required in 29 U.S.C. § 1140 actions).

■ There are, however, also cases which have held that plaintiffs are required to exhaust administrative remedies before bringing an action under 29 U.S.C. § 1140. *See Kross v. Western Electric Co., Inc.,* 701 F.2d 1238, 1243–45 (7th Cir.1983) (holding that administrative exhaustion is required for a claim under 29 U.S.C. § 1140 brought under 29 U.S.C. § 1132(a)(3)); *Mason v. Continental Group, Inc.,* 763 F.2d 1219 (11th Cir. 1985), *cert. denied,* 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986). In any event, plaintiff does not bring a claim under 29 U.S.C. § 1140 in this case. Instead, plaintiff has brought what is primarily a claim for benefits under his insurance policy. This is the type of claim that should be addressed to the administrative appellate process. The cases cited by plaintiff do not stand for the broad proposition that administrative exhaustion is not required for any claims outside 29 U.S.C. § 1132(a)(1)(B). These cases stand simply for the proposition that exhaustion should not be required where there is nothing at issue but a question of statutory interpretation in an action alleging the deprivation of a statutorily protected right under ERISA. Plaintiff also cites *Unger v. U.S. West, Inc.,* 889 F.Supp. 419 (D.Colo.1995), which supports the same proposition and involved a claim for breach of fiduciary duty unaccompanied by any claim for benefits. Because plaintiff is asserting that he is entitled to additional benefits under the terms of his policy, this is not a case where all that is required is the interpretation of a section of ERISA. The mere fact that the same conduct resulting in an alleged deprivation of benefits can also be, for example, the basis for a claim of breach of fiduciary duty under 29 U.S.C. § 1109 does not mean that administrative exhaustion does not apply. *Simmons v. Willcox,* 911 F.2d 1077 (5th Cir.1990) ("any improper denial of benefits also constitutes a breach of fiduciary duty under ERISA, the court concluded that the exhaustion requirement would be rendered meaningless if plaintiffs could avoid it simply by recharacterizing their claims for benefits as claims for breach of fiduciary duty."); *Brown v. Star Enterprise,* 881 F.Supp. 257, 259

(E.D.Tex.1995); *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 826 (1st Cir.1988) ("[T]his [claim for past due benefits] is a simple contract claim artfully dressed in statutory clothing. If we were to allow claimants to play this characterization game, then the exhaustion requirement would be rendered meaningless."); *Challenger v. Local Union No. 1 of Int'l Bridge*, 619 F.2d 645, 649 (7th Cir.1980) ("To make every claim into a federal case would undermine the claim procedure contemplated by the Act."); *see also Mason*, 763 F.2d at 1224–27 (holding that administrative exhaustion is required not only for a claim under 29 U.S.C. § 1140, but also for claims for equitable relief under 29 U.S.C. § 1132(a)(3)).

In *Bartz v. Carter*, 709 F.Supp. 827 (N.D.Ill.1989), the court considered a series of claims that focused on the trustees of a plan converting it from a profit sharing plan to an employees' stock ownership plan in order to gain control of the corporation which was the plan sponsor. The court held that exhaustion of administrative remedies was not required for the breach of fiduciary duty claim embedded in the various claims for benefits in that action, but that the court could exercise discretion as to whether exhaustion was required for the remaining claims. *Id.* at 828. To the extent that this holding conflicts with the authority cited immediately above, it is rejected by this Court. However, the situation in *Bartz* is distinguishable from the present action. The court in *Bartz* pointed out that:

> [T]o the extent that Plaintiffs demand that the trustees personally make restitution for losses suffered by the Plan, they do not seek benefits due under the Plan as it presently exists, but rather they seek restitution of funds owing to the Plan due to violations of fiduciary duties committed by the trustees. See 29 U.S.C. § 1132(a)(3)(B)(ii). Therefore, plaintiffs' action is at least in part an action for breach of fiduciary duty, and exhaustion is not required. In fact, this case illustrates the wisdom of the rule against repairing plaintiffs to exhaust claims for breach of fiduciary duty. To require that the plaintiffs in this case ask the trustees to personally repay large sums of money would be

> futile, create needless delay, and would not fulfil the policies underlying exhaustion.

*Id.* (emphasis added). In this case plaintiff does seek benefits due under the plan as it presently exists. Further, plaintiff does not allege the sort of personal liability and individual wrongdoing at issue in *Bartz* that made the administrative review process in that case so obviously ineffectual.

In sum, the cases cited by plaintiff do no not convince this Court that his noncompliance with Nationwide's administrative review procedure should be excused in this case.

Next, plaintiff asserts that the exhaustion requirement should be waived in this case because the remedies he seeks would have class-wide applicability. Plaintiff relies on two cases for this proposition.

The first case upon which plaintiff relies is *Janowski v. Int'l Brotherhood of Teamsters*, 673 F.2d 931 (7th Cir.1982), in which the court considered whether a plan adopted before ERISA could adopt ERISA's definition of "normal retirement age" in 29 U.S.C. § 1002(24). The court held that, in contrast to the situation where an individual has applied for and been denied current benefits, where there is a pure question of statutory interpretation which defines the right of an entire class to future benefits, then administrative exhaustion could be waived. *Id.* at 935 ("This issue is solely a question of statutory interpretation and does not require a factual record."). The case at hand involves not simply concerns about future benefits, upon which there has been no opportunity for appeal, but at issue are plaintiff's applications for benefits due and owing and the denial of some portions of some charges and the misdirection of the payment of others. Each of these charges has its own unique factual circumstances. Further, as discussed earlier, the issues involved with plaintiff's claims for benefits under the plan present more than a mere matter of statutory interpretation.

The second case upon which plaintiff relies is *Shepherd v. Boise Cascade Corp.*, 765 F.Supp. 376 (W.D.Ky.1990), in which the court stated that:

Plaintiffs are asserting a class-applicable position that would have required the pension board to consider only the meaning of the Plan language, and would not have required the development of a factual record subject to controversy. The parties have stipulated concerning the length of credited service and the ages of the plaintiffs, and these are the only relevant facts. Where the only controversy is a matter of Plan interpretation, and the decision would have class applicability, the Court may properly waive the exhaustion requirement, and we do so in this case.

*Id.* at 380. In the present case, there is more at issue than just a question of plan interpretation. There has been no formal stipulation as to all of the relevant facts. For example, if Nationwide admitted that it rigidly applies the HIAA regime to claims like those of plaintiff, without regard to circumstances surrounding those charges, and without regard to additional relevant information provided by plaintiff on appeal of the denial of a charge, then this Court might be left with only the task of analyzing the HIAA calculation scheme to see if it fits a permissible interpretation of the definition of "reasonable and customary" in the plan. Although this is what plaintiff contends that Nationwide does, plaintiff has not demonstrated that this is what Nationwide has done to him. Plaintiff has not shown that relevant factual circumstances have no effect on Nationwide's decisions as to what charges are reasonable and customary. This is because plaintiff has never challenged Nationwide to reconsider an HIAA "reasonable and customary" calculation with information that might have made that calculation, as applied to one of his charges, produce a result in contravention of the terms of the plan. In other words, just because HIAA data is used by Nationwide to attempt to determine reasonable and customary limits does not necessarily mean that Nationwide would be inexorably wed to that data when additional information concerning a particular charge is provided to it in an appeal. Further, simply because the relief requested by plaintiff could potentially benefit an entire class of participants of a plan does not mean that administrative exhaustion is automatically excused. *Kennedy*

*v. Empire Blue Cross and Blue Shield,* 989 F.2d 588 (2d Cir.1993); *Adamski v. Meritor Savings Bank, Inc.,* 1990 WL 9796 (1990); *Kross v. Western Electric Co., Inc.,* 701 F.2d 1238 (7th Cir.1983) (the court affirmed the grant of defendant's motion for summary judgment where the plaintiff did not exhaust his administrative remedies prior to bringing suit, even though he brought a class action).

Plaintiff wishes to maintain a class action on the basis of a suspicion or theory that Nationwide improperly calculates reasonable and customary charges when processing claims. Plaintiff wishes to proceed without having first brought the issues in his amended complaint to Nationwide's attention in the context of a proper appeal which challenged Nationwide's methodology. If plaintiff had done so, Nationwide would have had the opportunity to review the treatment of a given charge and determine if its method of calculation was proper before being sued in federal court. Also, plaintiff wishes to represent a class of plan participants who have allegedly had their benefits deliberately misdirected to a service provider in contravention of their signed claims forms. Plaintiff has not even established that he could be a member of such a class. This Court is directed to a "pattern" consisting of only three charges out of well over five hundred forty presented to Nationwide by plaintiff (not including charges submitted on behalf of his wife) since January 1, 1993. The circumstances surrounding the first of these three charges do not comport with plaintiff's misdirection claims in his amended complaint and plaintiff did not properly appeal the payment of this charge. The second two alleged misdirections occurred after the commencement of this case, do not conform specifically with plaintiff's misdirection claims in his amended complaint, and were apparently paid to Mr. Fallick in full under the terms of the plan.

To allow plaintiff to proceed to prosecute the claims that are asserted in his amended complaint on a class-wide basis, when he has not exhausted his administrative remedies prior to the commencement of this action, would be exceedingly unfair. For example, in responding to initial discovery requests alone, defendants would likely be required to

manually review and potentially produce millions of documents relating to thousands upon thousands of Nationwide policy holders at tremendous time and expense.

Having considered plaintiff's arguments to the contrary, this Court concludes that plaintiff was required to exhaust the administrative remedies available to him before commencing this action. Mr. Fallick failed to exhaust his administrative remedies with respect to the claims he has articulated in his amended complaint. Further, plaintiff has failed to demonstrate that pursuit of the administrative remedies available to him would have been futile or that the remedies that were available to him would have been inadequate.

### V.

Based on the foregoing, defendants' motion for summary judgment is GRANTED. The clerk shall enter final judgment for the defendants. The costs of this action are assessed against the plaintiff.

It is so ORDERED.